**Mrs. Curtis ROBERSON, a Widow, Appellant,**

v.

**FORD LIFE INSURANCE COMPANY, Appellee.**

**No. 8173.**

Court of Civil Appeals of Texas, Amarillo.

Nov. 22, 1971.

Rehearing Denied Dec. 20, 1971.

Gowdy & Hall, James A. Gowdy, Littlefield, for appellant.

Crenshaw, Dupree & Milam, O. V. Scott, Jr., Lubbock, for appellee.

ELLIS, Chief Justice.

This appeal involves the question of liability under a credit life insurance certificate issued upon the life of the purchaser of an automobile by appellee insurance company. Liability was denied because material misrepresentations were made in the application for the contract of insurance. The appellant, plaintiff below, challenges the validity of appellee's defense on the ground that the insurance company failed to give timely notice of its refusal to pay the claim after discovery of the misrepresentations as required by the Texas Insurance Code. The judgment of the trial court is affirmed.

The plaintiff-appellant, surviving wife and assignee of all the interest of the surviving heirs of the insured, Herbert Roberson, now deceased, brought suit against the defendant insurance company, appellee herein, to recover under a certificate of credit life insurance issued upon the life of appellant's now deceased husband in connection with the purchase of an automobile from Keith Glover Ford, Inc., of Sudan, Texas. The defendant insurance company answered by general denial and with affirmative pleadings that coverage had been denied, and that it had tendered a refund of all the premium to the appellant by reason of material misrepresentations concerning the health of the insured upon which the appellee insurance company had relied in its issuance of the certificate of insurance.

The case was tried before the court without a jury. No express findings of fact or conclusions of law were requested and none were filed by the court. The court entered judgment that plaintiff-appellant take nothing and discharged defendant-appellee with its costs, from which judgment appellant has brought this appeal.

The appellant has predicated this appeal upon three points of error, contending, primarily, that appellee insurance company failed to comply with the requirements of Article 21.17, Vernon's Annotated Texas Statutes, Insurance Code, which provides:

"In all suits brought upon insurance contracts or policies hereafter issued or contracted for in this State, no defense based upon misrepresentations made in the applications for, or in obtaining or securing the said contract, shall be valid, unless the defendant shall show on the trial that, within a reasonable time after discovering the falsity of the representations so made, it gave notice to the assured, if living, or, if dead, to the owners or beneficiaries of said contract, that it refused to be bound by the contract or policy; provided, that ninety days shall be a reasonable time; provided, also, that this article shall not be construed as to render available as a defense any immaterial misrepresentation, nor to in any wise modify or affect Article 21.16 of this code . . . . "

We deem it appropriate at this juncture to summarize the evidence concerning certain events leading to the filing of this suit. During the summer of 1969, Harold Roberson, son of Herbert Roberson, now deceased, contacted Ernest Black in Amherst, Texas, concerning the purchase of an automobile for his father and mother. Black was an automobile salesman engaged in selling automobiles for various automobile dealers on a commission basis. Harold Roberson had purchased automobiles through Mr. Black on previous occasions. Black was acquainted with Herbert Roberson, the father, and was aware that the elder Roberson had been ill from a heart attack some months before. After some discussion and checking of invoices indicating the availability of the kind of automobile desired, Black referred Harold Roberson to Keith Glover Ford, Inc., in Sudan, Texas. Within a few days Harold Roberson went to the place of business of Keith Glover Ford, Inc., in Sudan, and agreed upon the

purchase of a certain automobile in his father's name. When the sales contract and the various papers were drawn for financing the automobile, including an application for credit life insurance, Harold Roberson stated to Keith Glover, the automobile dealer, that his father had just returned from the hospital and presently was not able to come in to sign the papers. Harold Roberson then took the papers to his father's home and secured the father's signature at the various places indicated for purchaser's signature and returned the papers to the office of Keith Glover Ford, Inc. The credit transaction was approved and Keith Glover, as issuing agent for Ford Life Insurance Company, issued a certificate of credit life insurance on the life of Herbert Roberson. Harold Roberson, the son, made the monthly payments on the automobile until the death of his father. Thereafter no further payments were made upon the indebtedness. Harold Roberson testified that after the death of his father, he went to see Mr. Black regarding the credit insurance and he was advised by Black to secure a death certificate and deliver it to Mr. Glover, the automobile dealer, who would handle the matter for him. Harold Roberson further testified that the death certificate was taken to Glover, but there is no evidence in the record from testimony by Harold Roberson, or otherwise, that establishes the date the death certificate was given to Glover or anyone else representing the insurance company.

A review of the record discloses that it is undisputed that (1) the application for the credit life insurance signed by Herbert Roberson, now deceased, contained representations that the applicant was in good health; (2) at the time the application for the credit insurance contained the representations of good health was made, the insured, his wife, appellant herein, and all other members of his family had knowledge that the insured was terminally ill with cancer; (3) the certificate of credit life insurance was issued on September 23, 1969,

the same date that the automobile was purchased; (4) the insured, Herbert Roberson, died of terminal cancer on December 31, 1969; (5) the certified copy of the death certificate introduced into evidence shows that the death of the insured occurred by reason of terminal cancer on December 31, 1969, and that it was signed by Dr. J. W. Chatwell on January 6, 1970, received by the local registrar on January 9, 1970, and certified as a true and correct copy by the local registrar before a notary public on January 12, 1970; (6) appellant, Mrs. Curtis Roberson, submitted her claim dated April 22, 1970, to the insurance company in April of 1970; and (7) by letter dated June 17, 1970, appellee gave notice to appellant of its refusal to honor the claim by reason of misrepresentation contained in the application regarding the health of the insured, and tendering the refund of the premium to the appellant.

■ Appellant insists that the evidence establishes that the appellee, through its agent, Keith Glover, the automobile dealer, was aware or that he had sufficient information to put him on notice that Herbert Roberson, the insured, was not in good health at the time of the purchase of the automobile and issuance of the credit life insurance certificate, and that the insurance company, after being so charged with knowledge and notice through its agent did not, within the reasonable time of 90 days therefrom, give notice of its denial of liability as required by the statute. In the cross examination of Mr. Glover by appellee's attorney, we find the following:

"Q How long—how well did you know Mr. Herbert Roberson?

"A I didn't know Mr. Herbert Roberson. I knew Bud or Harold Roberson, but I wasn't acquainted with his father.

"Q You didn't know his father at all then?

"A No.

"Q Did you know anything about his health situation?

"A Well, I didn't know anything about him at all.

"Q All right. Now, did Bud or Harold Roberson tell you anything about his father's health situation?

"A He mentioned the fact that he had only been out of the hospital a short time and he didn't feel up to coming in yet. That he was having to stay at home right at the present.

"Q Did you have any question but what Mr. Herbert Roberson was in good health?

"A Well, of course, I don't particularly think anything about anybody being in the hospital. That was no concern, particularly.

"Q It was not an unusual circumstance as far as you were concerned, is that right?

"A No, sir."

\* \* \* \* \* \*

"Q Mr. Glover, I believe you stated that you didn't know Mr. Herbert Roberson at all?

"A No, sir."

\* \* \* \* \* \*

"Q Would you have issued the insurance, Credit Life Insurance, knowing what Harold Roberson testified to this morning?

"A No, sir. I don't recommend it. I mean I wouldn't have sold it under that condition, no, sir. Had I have known it."

\* \* \* \* \* \*

"Q Mr. Glover, I want to ask you once again, you had no knowledge of the health condition of Mr. Herbert Roberson, is that correct?

"A No, sir.

"Q Had you known that he was not in good health, you would not have issued the policy, is that correct?"

\* \* \* \* \* \*

"A No, sir. I refuse a policy under those conditions, if they are known to exist to me."

During the direct examination of Mr. Glover by appellant's counsel, after testifying that he (Mr. Glover) understood that Harold Roberson was buying the car for his father, and that he did buy a car, we find the following:

"Q And when the papers were drawn, if anything was said, what was said with reference to Mr. Roberson signing and executing these papers?

"A He said, 'My father is not feeling up to coming in right now.'

"Q Did he say anything else?

"A He said he had been ill recently and and he wasn't up to coming in right now. Just not feeling—

"Q Did you make any further inquiries as to what was wrong with him?

"A No, sir."

We find also that Harold Roberson testified on cross examination by appellee's attorney as follows:

"Q At the time the certificate and the application was handed to you, were they completely filed (sic) out except for your father's signature?

"A Yes.

"Q You didn't tell Mr. Glover or the people there anything about your daddy's condition?

"A All that I can remember telling them was that he was unable to be there that morning and I—they gave me the papers to take to him to be signed. He showed me where to sign.

"Q Now, Mr. Roberson, when you went to see Mr. Black to buy this car you said you discussed with him a way in which some Credit Life Insurance

claim in the past had paid off a car for somebody?

"A There was something to that effect said, yes."

Mr. Glover also testified that he didn't "push" the sales of credit life insurance, and since he lived in a small town and knew most of the people in his area, he customarily made no extensive investigation in connection with such insurance. He further testified that he knew the son, Harold Roberson, and although he told him that his father had been ill and had been in the hospital, Glover stated, "I didn't question it any further than just what he volunteered." It is reasonable to conclude that the tenor of the statements and circumstances were not such as to either alert Mr. Glover, presumably an experienced and prudent man in dealings of this nature, to conduct any unusual investigative activity, or to arouse disbelief of his representation of good health set out in the application for the credit insurance. In regard to Harold Roberson's testimony concerning the taking of the death certificate to Mr. Glover, we find no testimony by Mr. Roberson, or Mr. Glover, or evidence otherwise fixing the date that such death certificate was delivered to or received by Mr. Glover or anyone else representing the insurance company.

■ Finally, the appellant contends that "the defendant's agent, Ernest Black" (the automobile salesman living in Amherst, Texas, who had referred the son of the purchaser of the automobile to the Sudan automobile dealer, Keith Glover) was aware or had sufficient information to put him on notice within the requirements of Article 21.17, V.A.T.S. Insurance Code, that the insured purchaser was not in good health at the time of the purchase of the automobile and the issuance of the credit life insurance certificate. Appellant then contends that the insurance company, after being so charged with knowledge and notice of the status of appellant's health, did not within 90 days therefrom give notice of its denial of liability as required by the statute.

Black testified that he knew of the elder Mr. Roberson's earlier illness and hospitalization in Amherst by reason of a heart attack. Also, he had made a donation of money along with others for his medical care, but he stated that he was not aware of his having been to Lubbock for treatment and operation in connection with his latter illness. He stated that he knew the elder Mr. Roberson was ill but he did not know he was seriously ill. Also, Black said that he did not recall having been asked by Harold Roberson, "knowing what you know about my dad, would you sell him a car?"

A careful examination of the record fails to disclose the requisite evidence to establish that Black was in any respect an agent of Glover or the insurance company regarding the issuance of the credit life insurance certificate here involved. His testimony was to the effect that he drew no salary nor participated in any profits in Mr. Glover's business other than certain commissions received and sharing in the profit or loss, as the case may be, on certain automobile transactions when he referred or brought a customer to Mr. Glover. He also testified that he had similar arrangements with other dealers. Additionally, he testified that he had no connection whatsoever with Ford Motor Company, Ford Motor Credit Company or with Ford Life Insurance Company. In addition, he stated that he sold no insurance and did not handle insurance in any manner.

It is well established that in the absence of findings of fact and conclusions of law, as in the instant case, the judgment of the trial court should be affirmed if it can be upheld on any legal theory that may have support in the evidence. Seaman v. Seaman, 425 S.W.2d 339 (Tex.Sup.1968); Bishop v. Bishop, 359 S.W.2d 869 (Tex.Sup. 1962). International Security Life Insurance Co. v. Kuhler, 459 S.W.2d 480 (Tex. Civ.App.—Amarillo 1970, writ ref'd n. r. e.).

Also, if no findings of fact were requested or filed, a reviewing court should presume that the trial court resolved every issue of fact in favor of the judgment, and the evidence shall be viewed most favorably in support of the judgment, with all evidence to the contrary being disregarded. Quinn v. Dupree, 157 Tex. 441, 303 S.W.2d 769 (Tex.Sup.1957); Renfro Drug Co. v. Lewis, 149 Tex. 507, 235 S.W.2d 609 (1950); North East Texas Motor Lines v. Dickson, 148 Tex. 35, 219 S.W.2d 795 (1949).

In this case, it is undisputed that at the time of the application for credit life insurance, representations of "good health" were made in the application for the credit life insurance, and the insured, the appellant and all members of the family knew that Mr. Herbert Roberson was ill with terminal cancer. There is evidence that the appellant's claim dated April 22, 1970, showing cancer as the cause of the death of the insured was submitted to the insurance company in April of 1970. Further, it is undisputed that appellant was notified by the insurance company by letter dated June 17, 1970, (well within the 90 day period after the submission of the claim) that it was denying the claim because of the misrepresentations as to "good health" and was tendering a refund of the premium paid. Also, the evidence as hereinabove set out, is that Mr. Keith Glover, agent for the insurance company, did not know the insured, although he knew his son. Under all the circumstances, including the custom in the small community of not making intensive investigations, but relying primarily upon the representations in the application, together with vagueness of the statements to Mr. Glover concerning the status of his father's health and the reason for taking the papers to his father for signature, the evidence could reasonably support the conclusion that Mr. Keith Glover was not aware nor had sufficient information to charge him with notice of the misrepresentations contained in the application for the insurance contract. Furthermore, under the evidence and the surrounding circumstances, the court could reasonably find that Mr. Black was not an agent for the appellee.

It is also well established that the trier of the facts is entitled to draw all reasonable inferences and deductions from the evidence submitted, and that any fact may be established by circumstantial evidence. Prudential Insurance Company of America v. Krayer, 366 S.W.2d 779 (Tex.Sup.1963); Lynch v. Ricketts, 158 Tex. 487, 314 S.W.2d 273 (Tex.Sup.1958); Burt v. Lochausen, 151 Tex. 289, 249 S.W.2d 194 (1952). Further, the trial court is the sole judge of the credibility of the witnesses, the weight to be given their testimony along with the other evidence submitted, and was entitled to observe and evaluate the demeanor of the witnesses, consider all circumstances and draw reasonable inferences therefrom. In this case, the trial court resolved the fact issues against the appellant.

After reviewing all of the evidence, including the circumstances and inferences which may be properly drawn therefrom, we overrule appellant's points of error and hold that there is sufficient evidence of probative force in the record, when viewed favorably toward the judgment, as required, to support a finding that appellee gave notice of its refusal to pay the claim and tendered the refund of the premium, within the reasonable time of 90 days after discovery of the material misrepresentations, in compliance with the requirements of Article 21.17, V.A.T.S. Insurance Code. Accordingly, the judgment of the trial court is affirmed.