**CHANDLER STATE BANK, Appellant,**

v.

**Billy G. DORSEY, Appellee.**

**No. 1441.**

Court of Civil Appeals of Texas, Tyler.

May 28, 1981.

Richard Brooks Hardee, Tyler, for appellant.

Robert Hindman, Kirby & Hindman, Tyler, for appellee.

McKAY, Justice.

This is a suit for conversion of an automobile.

Appellee, Billy Dorsey (Dorsey), who had borrowed from Chandler State Bank, appellant (bank), brought suit against the bank and its officer, Phillip Hale (Hale) for conversion of a pickup truck. The bank pled that it had not released possession of the collateral security (delivered to the bank by a co-maker of the note) since Dorsey had failed to comply with insurance requirements, had obtained the loan through misrepresentation, and because the security was impaired.

Trial was had to a jury, and based upon the verdict, the trial court rendered judgment for Dorsey for $5,775.28 with interest from date of judgment at nine percent (9%) per annum.

The jury (1) found the bank failed to act in good faith; (2) found Dorsey's loss for his down payment and monthly payments was $1,775.28; (3) found bank acted wilfully and maliciously in repossessing Dorsey's pickup truck; (4) awarded $4,000 for exemplary damages; (5) did not find Dorsey failed to keep and perform any covenant, obligation, or liability; (6) did not find that any representation or statement made by Dorsey to bank was false in any material respect when made or furnished; (7) did not find bank believed that performance of the security agreement was impaired; (8) did not find bank felt insecure on the note for any reason; (9) did not find that bank believed that the prospect of payment of the note was impaired.

The first six points of the bank are evidentiary points. Bank urges that there is no evidence, or no factually sufficient evidence, to support the findings of the jury that the bank acted wilfully and maliciously in repossessing its collateral security, to support the awarding of exemplary damages, to support the finding that Dorsey did not fail to keep and perform any covenant, obligation or liability with or to the bank,

or to support the jury's failure to find that Dorsey made any false statement in any material respect.

Dorsey and Bonny Erwin (Erwin) were cousins and worked together in the rose business. Dorsey testified that he agreed to pay Erwin $5,500 for a 1975 Chevrolet pickup, with $1,500 down and the rest to be financed, and that they went together to the bank where he borrowed $3,800. He stated that the note he signed was in the total amount of $4,955.04 with the first payment due March 3, 1976, and that he made two payments in advance totaling $275.28 on February 17, 1976. Payments were to be $137 per month [actually $137.64] for 36 months.

Dorsey further said that he was not asked about his driving record at the time he obtained the loan and signed the note, but was asked about his credit record, and that he told Hale that his credit record was "kind of poorly * * * I had some marks on it then"; that Erwin signed the note with him, but he did not know whether the bank required Erwin to do so; that at the request of the bank he applied for and paid $250 to Horris Beall for insurance on the pickup about two days before he made the double payment to the bank but never received the policy; in late March the pickup was discovered missing about 11 or 12 o'clock at night from where he parked it on Morris Street in Tyler; that he did not know anyone else had a key and gave no one permission to take it; that he called the police and notified the bank the next morning by going to see Hale, and Hale told him he did not have any insurance and that the bank had sent a cancellation notice which Dorsey had not received; that Hale said he had the pickup and it would be released to Dorsey when Dorsey got insurance.

In further testimony Dorsey said that his insurance agent did not have a cancellation notice, but several days later he (Dorsey) received notice of cancellation by Continental Insurance Co. by mail from John Clark Agency at Chandler; that he did not know Clark; that he talked to his attorney and

purchased another policy on the pickup, which was not in his possession, from County Mutual; that he went back to the bank and was told that he would have to get the pickup financed elsewhere, although the bank had received a copy of the new insurance policy; that he asked for his pickup but did not get it.

Hale testified that he received a call that an insurance policy on the pickup would not be issued; that he did not write Dorsey about it and did not remember whether he telephoned him; that he talked to Erwin and told him something had to be done; that he had Dorsey's address and telephone number; that he probably would not have made the loan without Erwin on the note; that Erwin brought him the keys to the pickup and told him that he, Erwin, wanted off the note; that Dorsey came to the bank later the same day on which the pickup was taken and delivered to the bank, and he told Dorsey he had to get it financed elsewhere or pay off the note; that he called the loan but did not tell Dorsey to go get insurance; that he called the loan on Dorsey's driving record and that Dorsey "misrepresented himself at the outset of the loan"; that he never let Dorsey have the pickup and later sold it and applied the proceeds to the loan and financed a loan to the man to whom he sold it.

Hale further testified that the Clark Agency called him that the insurance on the pickup was cancelled; that he later got a letter to that effect which also indicated that insurance on Dorsey's 1970 Mercury and 1971 Chevrolet upon which the bank had no liens contained a loss payable clause to the bank; that he had a copy of the policy on the two cars in his file and also had a copy of the County Mutual policy on the pickup in his files.

Hale also said he probably was in a better position to correct the problem than Dorsey and could have done so, but it wasn't his responsibility; that Dorsey was one payment ahead when the pickup was repossessed; that Dorsey told him that he had a good driving record and had no problem with insurance; that Dorsey made another payment May 17th of $137.64; that he did not discuss any accident on Dorsey's driving record with Dorsey before picking up the truck.

Erwin testified that he thought Dorsey was abusing the pickup and asked Hale if he could get off the note; that Hale told him he could get off the note only if he brought the truck in; that he later told Dorsey he had taken the truck but had never told Dorsey he wanted off the note before taking the truck; that he told Dorsey if he wanted the truck he could get it financed or take it to the bank because Erwin was getting off the note.

■ The bank argues that its objection to issues 3 and 4 should have been sustained because there is no evidence or factually insufficient evidence to support an affirmative finding. Issue 3 inquired whether the bank, acting through Hale, or agent or employee, acted wilfully and maliciously in repossessing Dorsey's pickup; to this issue the jury answered in the affirmative. In issue 4 the jury fixed the exemplary damages at $4,000.00. In passing upon no evidence points we must view the evidence in its most favorable light in support of the jury verdict, considering only the evidence and inferences which support the finding and rejecting the evidence and inferences to the contrary, and in passing upon insufficient evidence points we must consider all the evidence in the record. Calvert, " 'No Evidence' and 'Insufficient Evidence' Points of Error," 38 Texas Law Review 361 (1960); *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661 (1951).

■ For a recovery of exemplary damages to be sustained it must be shown that the bank acted wilfully and maliciously in repossessing Dorsey's pickup truck. *Bennett v. Howard*, 141 Tex. 101, 170 S.W.2d 709, 712 (1943); 17 Tex.Jur.2nd Damages, § 178, p. 245.

■ Exemplary damages are imposed for punishment. *Steinberg v. Morgan*, 300 S.W. 253, 256 (Tex.Civ.App.—Amarillo 1927, no writ) and as an example for the good of the public. *Allison v. Simmons*, 306 S.W.2d

206, 211 (Tex.Civ.App.—Waco 1957, writ ref'd n. r. e.)

In our view there is sufficient evidence in the record to support the jury's answers to issues 3 and 4. It is not clear whether Hale required Erwin to sign the note with Dorsey before he would make the loan to Dorsey. The record does indicate that Erwin and Dorsey ceased to be friends, and Erwin went to the bank and asked Hale to release him from the note. Hale replied he could not do that unless Erwin delivered the pickup to the bank. Erwin took the pickup late at night, without the knowledge or consent of Dorsey and delivered it to the bank the next morning. When Dorsey missed his pickup he went to the bank and told Hale the pickup was missing, and Hale replied it was in the possession of the bank. Dorsey testified that Hale said the pickup would be released to him when he, Dorsey, got insurance on it. Dorsey did not know of the cancellation of the policy applied for but did obtain other insurance; nevertheless, Hale would not release the pickup to Dorsey, even though Dorsey was ahead on his payments. Hale admitted the bank would have been protected by the policy of insurance Dorsey obtained after the first policy was cancelled and not issued, but Hale testified he refused to release the pickup because Dorsey "misrepresented himself at the outset of the loan."

The state of mind which will sustain an award of exemplary damages includes malice and wanton disregard for the rights of others. Malice, as applied to punitive damages, has been defined as "ill will, bad or evil motive, or such gross indifference to or reckless disregard of the rights of others as will amount to a willful or wanton act." *Kidd v. Hoggett*, 331 S.W.2d 515, 518 (Tex.Civ.App.—San Antonio 1959, writ ref'd n. r. e.). It is not necessary to prove affirmative malice or ill will, as malice can be inferred from acts and conduct of wrongdoer. *Tennessee Gas Transmission Co. v. Moorhead*, 405 S.W.2d 81, 86 (Tex.Civ.App.—Beaumont 1966, no writ). The bank's first six points are overruled.

By points 7 and 8 the bank contends that the trial court erred by overruling its motion for new trial because the finding that Dorsey did not fail to keep and perform any covenant, obligation or liability made with the bank is not supported by the evidence, and is contrary to the great weight and preponderance of the evidence. The motion for new trial was a no evidence complaint, while the point here is factual insufficiency. Dorsey testified that Hale did not ask about his driving record at the time he obtained the loan but only asked about his credit record. After Dorsey's first application for insurance was not issued or was cancelled, he obtained a policy which Hale testified would protect the bank before the bank sold the pickup. These points are overruled. The bank had the burden in this issue and the jury found it did not meet that burden. We have examined all the evidence and we believe that the jury's finding is not so against the great weight and preponderance of the evidence as to be clearly wrong and unjust.

It is further maintained by the bank that the trial court erred in overruling its motion for new trial because the finding that Dorsey did not make a false statement is not supported by evidence and is contrary to the great weight and preponderance of the evidence. The motion for new trial upon which this complaint is made alleged there was no evidence to support the jury's answer. The bank had the burden of proof on its issues, and a negative answer to such issue amounted to a failure of the bank to persuade the jury by a preponderance of the evidence to find in accord with the bank's contention. *Smith v. Safeway Store, Inc.*, 433 S.W.2d 217, 218 (Tex.Civ.App.—Tyler 1968, writ ref'd n. r. e.). Therefore, we will address only the great weight and preponderance of the evidence point. We have examined all the evidence, and we believe that the jury's finding is not so against the great weight and preponderance of the evidence as to be clearly wrong and unjust.

Points 11 through 16 are overruled for the reasons stated in the foregoing paragraph.

Judgment of the trial court is affirmed.