NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH,
PENNSYLVANIA, Appellant,

v.

HUDSON ENERGY COMPANY,
INC., Appellee.

No. 9655.

Court of Appeals of Texas,
Texarkana.

Sept. 19, 1989.

Rehearing Denied Aug. 15, 1989.

Second Rehearing Overruled
Sept. 19, 1989.

Rehearing Overruled Nov. 17, 1989.

**418**

Charles H. Smith, John W. Moore, Maloney & Smith, Dallas, for appellant.

Jack N. Price, Austin, Lynn S. Patton, Patton, Nix & Young, Longview, for appellee.

GRANT, Justice.

National Union Fire Insurance Company of Pittsburgh, Pennsylvania, ("National Union") appeals from an adverse judgment of the trial court based upon a jury verdict.[1] The judgment awarded Hudson Energy Company, Inc. ("Hudson Energy") actual damages of $111,440, exemplary damages of $75,000, and attorney's fees of $40,000.

Hudson Energy is a company that services drilling rigs. Adam Hudson ("Hudson"), president of Hudson Energy, purchased for the company a Cessna P–210 aircraft from Johnny Walker's Eastex Aviation. Hudson discussed his qualifications as a pilot with Walker, entered into a flight instruction program with him, and asked for help in finding insurance coverage for the aircraft. Walker contacted James E. Ragsdale of Cooper Aviation Insurance Agency ("Cooper"), and he told Ragsdale that Hudson had reported having a private pilot's certificate but that Hudson could not locate it. Hudson submitted an original application for insurance to Cooper. The application indicated that Hudson was a student pilot. Cooper returned the application to Hudson stating that the company had been told that Hudson was a private pilot and needed an application showing the corrected information.

On the subsequent insurance application that was submitted to Cooper and placed with National Union, Hudson indicated that he had a total of 236 logged flying hours and that he was a private pilot. An insurance policy was issued to Hudson on June 17, 1980, with a policy period of May 23, 1980 to May 23, 1981. Item 5 of the Declarations in the policy contained a "pilot clause" or "pilot endorsement":[2]

> IT IS AGREED THAT Item 5 of the Declarations—When in flight the aircraft

---

1. Hudson Energy sued National Union, the insurer, and Southeastern Aviation, Inc., for aircraft damage incurred in a landing accident. Initially, the trial court entered a summary judgment on behalf of National Union and Southeastern Aviation. On appeal, this Court, in an unpublished opinion, reversed and remanded the case for trial. Prior to the jury trial, Southeastern Aviation was dismissed from the suit.

 This Court reversed and remanded the case for trial due to the existence of material issues of fact with respect to (1) who was actually piloting the plane at the time of the loss, (2) whether Bishop qualified as an insured pilot under the policy, (3) whether the coverage extended to student instruction, (4) whether the coverage extended to simultaneous piloting of the plane, (5) whether the fifteen hours of dual instruction required of Hudson were to occur in the covered aircraft, (6) the extent of coverage determined by the terms "pilot" or "piloted," and (7) whether or not an unqualified pilot increased the risk of loss to the insurer in violation of the express terms of the policy. *Hudson Energy Company v. National Union Fire Ins. Co.,* No. 84–9129 (Tex.App.–Texarkana, Mar. 13, 1984) (unpublished).

2. A "pilot clause" or "pilot endorsement" in an aircraft insurance policy provides in substance that the insurer is not liable for any damage incurred while the aircraft is operated by other than the pilot or pilots specified in the policy. *Mqng v. Travelers Insurance Co.,* 412 S.W.2d 672 (Tex.Civ.App.–San Antonio 1967, writ ref'd).

will be piloted only by—is completed to read as follows:

> Adam R. Hudson provided he is a private pilot properly certificated by the FAA having a minimum of 213 logged flying hours, and receives 15 hours of dual instruction from a properly certificated flight instructor prior to solo; or Any private or commercial pilot with an instrument rating properly certificated by the FAA having a minimum of 750 logged flying hours, 150 of which are in retractable gear aircraft, including 15 hours in the make and model aircraft.

The policy exclusions provided in part that the policy does not apply:

> To any *insured* while the *aircraft* is *in flight*
> (a) if piloted by other than the pilot or pilots designated in the Declarations;
> (b) if piloted by a pilot not properly certificated, qualified and rated under the current applicable Federal Air Regulations for the operation involved, whether or not said pilot is designated in the Declarations.

The aircraft departed from the Gregg County Airport at approximately 9:00 a.m. on July 13, 1980, with Hudson in the left front seat, Rodney Bishop in the right front seat, and a passenger in a middle row of seats behind Bishop. Bishop, a flight instructor, was giving flight instruction to Hudson and had access to the flight controls. Hudson flew the aircraft to New Orleans and brought the plane into the landing pattern and downwind leg in preparation to land on runway 31 at Lakefront Airport. Bishop got on the controls momentarily in order to avoid a helicopter that was leaving the airport. Hudson then continued his descent, and the tower controller changed the landing runway, necessitating a tighter, steeper, and more rapid turn. Hudson landed on all three wheels, causing the plane to bounce back up into the air. Bishop got on the controls with Hudson, raised the nose of the plane to get the main wheels on the runway, and then lowered the nose wheel back down on the runway.

The aircraft veered to the left off the runway, and Bishop hit the right brake so as to decrease the veer. The nose wheel sheared off, and the plane flipped upside down. Bishop testified that he was on the controls from the time the plane started to veer until it flipped over and that Hudson might also have been on the controls during that time.

The jury found that the difference in market value of the aircraft, before and after the accident, was $111,440. The jury awarded $75,000 exemplary damages based upon their affirmative answers that National Union had breached its duty of good faith and fair dealing and that the company had acted with malice or gross negligence. The jury also awarded $40,000 for attorney's fees.

National Union pled the policy exclusions. This placed the burden upon Hudson Energy to negate the exclusion. *See Sherman v. Provident American Insurance Co.*, 421 S.W.2d 652 (Tex.1967). Thus, Hudson Energy had the burden of proving that the aircraft was not piloted by a person or persons other than those designated in the policy. The judge couched jury question 1 in the terms of the policy:

> Do you find from a preponderance of the evidence that, at the time of the loss claimed under the policy of insurance in question, the aircraft was not in flight piloted by other than the pilot or pilots designated in the policy declarations, as follows:
>> "Adam R. Hudson provided he is a private pilot properly certified by the FAA having a minimum of 213 logged flying hours, and receives 15 hours of dual instruction from a properly certificated flight instructor prior to solo; or
>> "Any private or commercial pilot with an instrument rating properly certificated by the FAA having a minimum of 750 logged flying hours, 150 of which are in retractable gear aircraft, including 15 hours in the make and model aircraft."
> Answer "The aircraft was not in flight [3] piloted by other than a pilot or pilots designated in the declarations,"

---

3. The term *in flight* was defined for the jury to mean "the time commencing with the actual

or

"The aircraft was in flight piloted by other than a pilot or piilots (sic) designated in the declarations."

Answer: "The aircraft was not in flight piloted by other than a pilot or pilots designated in the declarations."

National Union complains of the submission of this issue to the jury because there was no fact issue (because Adam Hudson judicially admitted he was piloting the aircraft), it did not present a controlling fact issue, and it presented a question of law to the jury.

■ We must first address the matter of the ambiguity of the pilot clause as applied to the facts of this case. Generally, a person seeking to establish an ambiguity in a written contract has the burden of pleading the ambiguity by setting out that portion of the contract alleged to be ambiguous and also pleading the meaning or construction urged by the party. *Crozier v. Horne Children Maintenance and Educational Trust*, 597 S.W.2d 418 (Tex.Civ. App.—San Antonio 1980, writ ref'd n.r.e.). However, when one party takes the position that the contract has one meaning and the other party takes the position that the contract has another meaning, the court is faced with deciding which meaning is correct as a matter of law or in deciding that the contract is ambiguous, thereby allowing parol evidence as to the parties' intent. Also, where the contract set out by one of the parties shows an ambiguity on its face, the court may be faced with the need for an interpretation in order to decide the case. *See Quanah, A. & P. Ry. Co. v. Cooper*, 236 S.W. 811 (Tex.Civ.App.— Amarillo 1922, writ ref'd).

In the present case, neither party pled that there was an ambiguity, and there is no complaint on appeal urging that the trial court erred in failing to find an ambiguity.

If a contract is not ambiguous, it is the court's duty to interpret it. *N.M. Uranium, Inc. v. Moser*, 587 S.W.2d 809 (Tex. Civ.App.—Corpus Christi 1979, writ ref'd n.r.e.). In the present case, the trial judge takeoff run of the aircraft and continuing thereafter until it has completed landing roll."

found the contract unambiguous and refused to allow National Union to present evidence as to the meaning of the pilot clause in the contract. The trial judge submitted jury question 1 in the language of the insurance policy to ask the jurors the fact question as to whether the person or persons piloting the aircraft met the requirements of the policy.

■ A jury may not be called upon to construe the legal effect of an instrument. *Knutson v. Ripson*, 163 Tex. 312, 354 S.W.2d 575 (1962). Although jury question 1 is not phrased to ask the jury to decide the obligations of the parties under the policy, it is phrased in the language of the policy. Question 1 asked the jury to determine who was piloting the aircraft when the loss occurred. We conclude that the trial judge determined as a matter of law that there was coverage in a situation where a qualified flight instructor and a student were simultaneously piloting the aircraft. We further conclude that the jury found Bishop as a qualified flight instructor and Hudson as a flight student were simultaneously piloting the plane at the time of the occurrence in question. Since the trial judge found that the policy language was not ambiguous, the submission of this jury question in that language was not error.

■ National Union takes the position that coverage must be denied as a matter of law if an unqualified Hudson and a qualified Bishop were simultaneously piloting the aircraft at the time of the loss. Its authority for this proposition is *Master Feeders II, Inc. v. United States Fire Insurance Co.*, 15 Av. Cas. (CCH) ¶ 18, 420 (D.Kan.1980), *aff'd*, 17 Av. Cas. (CCH) ¶ 18, 205 (10th Cir.1983). The Kansas court determined that simultaneous piloting by a qualified and an unqualified pilot was not a covered risk. However, the exclusion in the *Master Feeders* policy provided that the policy did not apply if the plane was operated "by *any pilot* other than as listed in the declarations." The exclusion in the instant case reads, "if piloted by other than the

*pilot or pilots* designated in the Declarations." (Emphasis added).

Hudson relies upon *Marshall v. Peerless Insurance Co.*, 428 S.W.2d 190 (Ky.1968), to support its position that simultaneous piloting was covered. In *Marshall,* the court reasoned that since the qualified pilot was actually piloting the plane at the time of the accident, and since the qualified pilot's presence at the controls satisfied the provisions of the federal aviation regulations, he was pilot-in-command of the aircraft and thus legally responsible for its operation. *Marshall,* 428 S.W.2d at 193.

The trial judge rejected National Union's contention that coverage existed if only Hudson was in control and possessed the required qualifications or if only Bishop was on the controls. The language of the policy does not compel a determination that there was no coverage when Bishop, a qualified pilot pursuant to Item 5 of the insurance policy declarations, was on the controls and could override his student pilot.

 National Union also complains that jury question 1 was confusing because it was a multiple inquiry and that it constituted a comment on the weight of the evidence. Multifariousness in jury questions is no longer improper. *Shasteen v. Mid–Continent Refrigerator Co.*, 517 S.W.2d 437 (Tex.Civ.App.-Dallas 1974, writ ref'd n.r.e.). Furthermore, the wording of this question does nothing more than pose the question in the policy language. It does not comment on the weight of the evidence but merely makes the inquiry.

 National Union contends that the answer to jury question 1 is in fatal conflict with the jury's answers to question 4(a) and (b).[4] If there is a reasonable basis upon which the jury's answers may be reconciled, the answers do not conflict. *Winn v. Ridgewood Development Co.*, 691 S.W.2d 832 (Tex.App.-Fort Worth 1985, writ ref'd n.r.e.). The answer to question 1 does not conflict when read to indicate that Bishop and Hudson were simultaneously piloting the plane with Bishop being the pilot-in-command at the time in question. This interpretation is further supported by the evidence, which, in accordance with *Traders & General Ins. Co. v. Wilder,* 186 S.W.2d 1011 (Tex.Civ.App.—Galveston 1943, writ ref'd), can be considered in construing jury responses. Bishop testified about who was in control of the plane as follows:

Q O.K. And as soon as the problem occurred you got on the controls with him?

A Right.

Q And the way you normally do it is, you try to override the student—

A Well, he's usually trying to do the same thing you are, if he's flown enough to have experience—

Q Right.

A —normally, and, yeah, if he is, you would override, yes.

Q O.K. You had the feeling that, although he was on the controls, he was trying to do the same thing—

A Yes, I did have that feeling.

Q All right. And that occurred with him being on the controls as the airplane ran off out into the grass?

A Right.

4. The pertinent parts of question 4 and the jury's answers are as follows:

Do you find from a preponderance of the evidence that to induce National Union Fire Insurance Company of Pittsburgh, Pennsylvania to issue the policy of insurance in question Adam R. Hudson falsely represented to National Union that (a) he was a private pilot properly certificated by the FAA, or (b) that he had a minimum of 213 logged flying hours, or (c) that the insured aircraft would be used only for pleasure and business purposes?

Answer "Yes" or "No" in each space of each column.

| | Was Representation Made? | Was Representation False? | Was Representation Made to Induce Reliance? |
|---|---|---|---|
| (a) private pilot properly certificated | yes | yes | no |
| (b) had minimum of 213 logged flying hours | yes | yes | no |

National Union contends that we must look at the time when the act occurred that caused the damage to determine who was piloting the plane. We agree that this is the appropriate time frame and that the language in jury question 1 (to which there was no objection), "when the loss occurred" is broad enough to encompass the act which resulted in the loss. National Union contends that the undisputed evidence shows that Hudson was in control when the plane made its first bounce on the runway and that the evidence further shows that this was the cause of the loss.

The evidence is undisputed that at the time the plane tipped over both Bishop and Hudson were on the controls. Bishop was asked if the first bounce on the runway could have contributed to the loss of control of the plane and its veering out into the grass. Bishop at first indicated that he did not think so because he had bounced like that before and the plane had not veered. He ultimately concluded that he did not know, that it could have, but that he was not sure.

National Union's expert, Thomas Motley Smith, testified as follows:

Q Do you have an opinion with regard to the cause of the accident?

A The cause of the accident would have been the airplane striking the ground in an improper landing attitude, landing on its nose wheel first, the main gear is designed to be landed on first, and the subsequent bouncing and porpoising and wheelbarrowing and the loss of control that resulted so that the airplane then swerved off of the—to the area off the runway which was soft and where the nose collapsed as it proceeded into the soft terrain.

Q What caused that?

A The inexperience of the pilot flying the airplane.

Smith also testified:

Q And, sir, if it is in evidence, or if it is a fact that the plane was under control after exiting the runway,[5] that the pilot simply left it to cross the remaining space and taxi back onto the adjoining taxiway, and that on the way the wheel either sank up in soft turf or hit a culvert and broke off, then what is the cause of the accident?

A The cause of the accident would have been the pilot's poor judgment in taxiing the aircraft on unimproved terrain rather than on the runways or taxiways.

The jury had a basis in evidence to determine that the act which caused the damages occurred when Bishop as flight instructor and Hudson as a flight student were simultaneously piloting the aircraft.

National Union also complains of the trial court's admission of hearsay during the testimony by Walker. The initial question complained about was as follows:

Q Now, with respect to this pilot and warranty provision and whether or not there would be coverage under the policy under certain circumstances, what did Mr. Ragsdale tell you?

(An objection was made before this question was answered.)

■ After a long colloquy between the court and the attorneys outside the presence of the jury, the trial court concluded that the cross-examination had, in effect, covered this area by the extensive questioning concerning the policy, and that Hudson's counsel therefore should be allowed to answer the question.[6] When the jury

5. Bishop testified that "[t]he airplane straightened up after we left the runway, and we thought we had plenty of room to stop the runway—I mean to stop the airplane. There was no panic and finally had it under control and it was just a matter of letting it bleed off speed."

6. Included in the testimony elicited from Walker on cross-examination by National Union was the following:
Q All right. Now, if he was a student pilot, he didn't meet the insurance requirements to fly with an instructor, either, did he?
A As a student pilot?
Q Yes, sir.

was brought back, Hudson's counsel reworded the question as follows:

> Q Mr. Walker, yesterday in the questioning by Mr. Smith, you made a statement, gave the answer that it was explained to you with reference to this pilot warranty the definition here, that as long as Mr. Hudson was in the airplane with a pilot meeting the qualifications of the second category, as long as these two people were behind the controls, there was coverage. My question to you is, sir, who explained that or made that statement to you?

An objection was then made that the question called for a hearsay response, that it was leading, and that it mischaracterized the former testimony. After the court overruled the objection, the following question and answer were made:

> Q Excuse me. I just asked you who made that statement to you. You understand that it's my reference to your previous testimony about an explanation that was given to you that as long as he had a pilot behind the controls that met this second category of qualifications, there was coverage. Who told you that?
>
> A Jim Ragsdale.

We find that there is basis in the record for the trial court's ruling that this question merely called for repetition of testimony which had previously been elicited from the same witness on cross-examination, and although the question is leading, no complaint about its leading nature has been made on appeal. National Union did not object to the interpretation of the contract by the witness. As reworded, the question does not ask what was said, but only who

---

A Yes, sir. He would have met the requirements to fly it with a flight instructor.
Q With the policy—is it your understanding that with the policy saying in clear terms it requires a private pilot to operate the airplane that as a student pilot he could fly the airplane?
A The way I interpreted the policy and the way they explained to me, for him to act as pilot in command—
Q I'm just talking about to fly the airplane in any capacity, not as a pilot in command.
A No, sir. I didn't understand it that way.

said it. If it is hearsay, it is harmless because this testimony was repetitious of testimony already before the jury.

■ National Union further complains of the trial court's exclusion of the testimony of Gene Guyey, the defendant's underwriting expert, offered by bill of exception, concerning the interpretation of the insurance contract. National Union concedes that Guyey's testimony would not normally be admissible but insists that it became relevant and admissible to rebut Walker's testimony. National Union cites *Johnson v. Hermann Hospital,* 659 S.W.2d 124 (Tex.App.–Houston [14th Dist.] 1983, writ ref'd n.r.e.). The court held in *Johnson* that evidence which is inadmissible in a party's case-in-chief may become relevant and admissible in rebuttal. *Johnson,* 659 S.W.2d at 126.

■ Hudson contends that since National Union opened the door to this testimony, it cannot now say that the additional testimony on interpretation is admissible because of Walker's response on redirect examination. The record shows that testimony as to how Ragsdale interpreted the policy to Walker was first opened up on cross-examination, but Walker was questioned concerning the custom as to dual instruction on the initial direct examination:

> Q Now, Mr. Walker, is it customary, based on your experience, that whenever there is that dual instruction provision, that that dual instruction is in the airplane that is insured under the policy?
>
> A Yes, sir. It would be ridiculous for a man to pay the price of an airplane like that and then have to go out and

. . . .

Q Now, the problem that we've got here on this is that this little word right here, "provided he is a private pilot," if that—that—that's a requirement that he actually have that certificate to operate the aircraft as opposed to having a student pilot certificate to operate the aircraft?
A No, sir. That's not the way it was explained to me by the agent, Mr. Ragsdale. It could be argued that the last answer was not responsive to the question, but no objection was made on that basis.

rent somebody else's airplane to fulfill the insurance requirements.

Proof of custom is admissible to explain an ambiguity in an insurance policy. *Fidelity Union Fire Insurance Co. v. Ballew–Satterfield Co.,* 10 S.W.2d 163 (Tex.Civ.App.—Amarillo 1928, no writ). But the trial court in the case had determined that there was no ambiguity in the policy. The above testimony came in without objection. Even if this testimony is construed to open the door to testimony of this nature, the exclusion of the testimony of Guyey would be harmless error since the trial judge interpreted the policy and there was no fact issue before the jury as to the intent of the parties at the time of the making of the contract.

National Union contends that it was entitled to an instructed verdict because as a matter of law Hudson breached Condition 19 of the policy. It also contends that submission to the jury of questions 5 and 6 [7] conditioned on affirmative answers to question 4 was an impermissible comment upon the weight of the evidence and denied National Union the right to trial by jury on its defense of breach of Condition 19 in the policy.

The conditioning of questions 5 and 6 on affirmative answers to question 4 inquiries does not constitute a comment on the weight of the evidence. National Union specifically pled that Hudson had breached Condition 19 of the policy by misrepresenting his pilot certification and flight experience.

Condition 19 provided in part that the policy "shall be void if the *named insured* has concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof."

Texas law provides that the insurer must within a reasonable time after discovering the falsity of a statement in an application give notice that it refuses to be bound by the policy. Tex.Ins.Code Ann. art. 21.17 (Vernon 1981). The same law provides that ninety days is a reasonable time. *Id. See Roberson v. Ford Life Insurance Co.,* 474 S.W.2d 314 (Tex.Civ.App.–Amarillo 1971, writ ref'd n.r.e.); *Prudential Insurance Company of America v. Torres,* 449 S.W.2d 335 (Tex.Civ.App.–San Antonio 1969, writ ref'd n.r.e.). The full text of Article 21.17 is as follows:

In all suits brought upon insurance contracts or policies hereafter issued or contracted for in this State, no defense based upon misrepresentations made in the applications for, or in obtaining or securing the said contract, shall be valid, unless the defendant shall show on the trial that, within a reasonable time after discovering the falsity of the representations so made, it gave notice to the assured, if living, or, if dead, to the owners or beneficiaries of said contract, *that it refused to be bound by the contract or policy;* provided, that ninety days shall be a reasonable time; provided, also, that this article shall not be construed as to render available as a defense any immaterial misrepresentation, nor to in any wise modify or affect Article 21.16 of this code. (Emphasis added).

7. Question 5 was submitted as follows:
 Do you find from a preponderance of the evidence that such representation was material to the risk to be covered by the insurance policy?
 Answer "Yes" or "No" in each space.
 (a) private pilot properly
 certificated _____
 (b) had a minimum of
 213 logged flying
 hours _____
 (c) aircraft would be used
 for business and
 pleasure _____
 Question 6 was submitted as follows:
 Do you find from a preponderance of the evidence that the loss made the basis of the

claim in this suit was caused by the failure of Adam R. Hudson to (a) be a private pilot properly certificated by the FAA, or (b) have a minimum of 213 logged flying hours, or was caused by (c) use of the aircraft for another purpose than business and pleasure?
 Answer "Yes" or "No" in each space.
 (a) private pilot properly
 certificated _____
 (b) had a minimum of
 213 logged flying
 hours _____
 (c) aircraft would be used
 for business and
 pleasure _____

The insurer is required to establish the date it discovered the falsity of the alleged representation and that within ninety days thereafter it gave the required notice of its refusal to be bound by the policy. *Womack v. Allstate Insurance Co.*, 156 Tex. 467, 296 S.W.2d 233, 235 (1956). National Union obtained a copy of the FAA "Record of Diligent Search" concerning Hudson's lack of qualifications. National Union contends that it complied with the notice requirement of Article 21.17 on September 9, 1980, and November 4, 1980, by sending Hudson reservation of rights letters.

Both of these letters indicate that National Union was continuing to investigate the claim. The September 9th letter sets forth the policy definitions, exclusions, declarations and conditions. This letter also attempts to reserve all rights to deny coverage or liability under the insurance policy.

The November 4th letter contains the following language:

Attached please find a copy of the Record of Diligent Search which we have just received from the FAA.

Please be advised that our legal counsel is currently reviewing the information pertinent to your claim, and as soon as we receive their report we will be in a position to make a final decision concerning the disposition of your claim. If you have any information or documentation which disputes the findings of the FAA, please furnish us with the information so that we may take it into consideration. Thank you for your patience and cooperation during our investigation of this matter.

This correspondence in no way states that National Union was refusing to be bound by the insurance policy because of the falsity of representations made in the application. Thus, it does not fulfill the notice requirements of Article 21.17. We find no error in the trial court's action in regard to that statute.

In answers to jury question 4, the jury found that Hudson had misrepresented that he was a certified private pilot and had 213 logged flying hours, but that the mis-representations were not made to induce the insurance company's reliance.

Five elements must be pled and proved before an insurer may avoid payment on an insurance policy because of misrepresentation by the insured. These elements are (1) representation by the insured, (2) falsity of the representation, (3) reliance thereon by the insurer, (4) intent to deceive by the insured, and (5) materiality of representation. *Mayes v. Massachusetts Mutual Life Insurance Co.*, 608 S.W.2d 612, 616 (Tex. 1980); *Sharp v. Lincoln American Life Ins. Co.*, 752 S.W.2d 673 (Tex.App.–Corpus Christi 1988, writ denied). The jury found that Hudson did not have an intent to deceive National Union. This finding is unchallenged on appeal. Therefore, National Union is not entitled to avoid payment under the policy on the basis of misrepresentation in the insurance application.

■ National Union contends that the evidence is factually and legally insufficient to support the finding that National Union acted with malice or gross negligence and that National Union breached the duty of good faith and fair dealing. Because the burden is on Hudson to prove these issues, we will review the legal sufficiency of the evidence under the review standards of *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex.1965), and the factual sufficiency under the review standards of *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661–62 (1951). Thus, we will first examine the record for any probative evidence to support the finding, ignoring all contrary evidence. If we find some probative evidence, we will test the factual sufficiency of that evidence by examining the entire record to determine whether the finding is clearly wrong and unjust.

Insurers owe a duty of good faith and fair dealing to their insureds, and a violation of that duty can give rise to a cause of action compensable in tort damages. *Arnold v. National County Mutual Fire Insurance Co.*, 725 S.W.2d 165 (Tex.1987). A cause of action for breach of that duty exists when there is no reasonable basis for a denial of a claim or when the insurer fails or delays to determine whether there is any

reasonable basis for the denial of the claim. *Arnold,* 725 S.W.2d at 167. In order to sustain such a claim, the insured must establish (1) the absence of a reasonable basis for denying or delaying payment of the claim and (2) that the insurer knew, or should have known, that there was no reasonable basis for denying or delaying payment of the claim. *Aranda v. Insurance Co. of North America,* 748 S.W.2d 210, 213 (Tex.1988).

Exemplary damages are recoverable for a breach of the duty of good faith and fair dealing under the same principles allowing recovery of those damages in other tort actions. *Arnold,* 725 S.W.2d 165. In order to be entitled to exemplary damages, the injured party must show that the tortfeasor acted with malice or gross negligence. *Trenholm v. Ratcliff,* 646 S.W.2d 927 (Tex.1983).[8]

According to the Supreme Court in *Burk Royalty Co. v. Walls,* 616 S.W.2d 911, 922 (Tex.1981):

> The essence of gross negligence is not the neglect which must, of course, exist. What lifts *ordinary* negligence into *gross* negligence is the mental attitude of the defendant; that is what justifies the penal nature of the imposition of exemplary damages. The plaintiff must show that the defendant was consciously, i.e., knowingly, indifferent to his rights, welfare and safety.
>
> ....
>
> All actions or circumstances indicating a state of mind amounting to a conscious indifference must be examined in deciding if there is some evidence of gross negligence.

Malice, as applied to exemplary damages, has been defined as ill will, bad or evil motive, or such gross indifference to or reckless disregard of the rights of others as will amount to a willful or wanton act. *Chandler State Bank v. Dorsey,* 618 S.W.2d 113 (Tex.Civ.App.–Tyler 1981, no writ).

Because National Union's conduct about which Hudson complained goes to good faith as well as malice or gross negligence, we shall examine the evidence on both of these issues together. Hudson takes the position that bad faith and malice or gross negligence are shown by the fact that National Union delayed informing him that it was denying coverage until he filed a lawsuit and then it denied coverage. The loss occurred on July 13, 1980. Hudson's sworn proof-of-loss statement was dated December 8, 1980. The suit was filed on July 30, 1981.

▮ In order to determine what inferences can be drawn from the delay and refusal to pay, we must look at the circumstances. A failure to pay after sufficient time for an investigation can be evidence of malice or gross negligence if the failure to pay is arbitrary and capricious. If, however, there is a bona fide controversy, this will suffice as a reason for the failure of the insurer to make prompt payment. *McCauley v. Boston Old Colony Insurance Co.,* 149 Ga.App. 706, 256 S.E.2d 19 (Ga.Ct.App.1979).

In the present case, a reasonable fact question was presented as to who was actually piloting the aircraft at the time of the loss. Another fact question was presented as to whether Hudson had the pilot qualifications which he had represented in his application for insurance. National Union offered evidence that their investigation showed that Hudson did not have a private pilot's license properly certified by the FAA and that he did not have a minimum of 213 logged flying hours. The company further ascertained that Hudson had failed the written test which he was required to pass in order to be certified as a private pilot. The record shows that Hudson was kept advised by the adjustor of the information which had been obtained from the FAA pertaining to its failure to find any record of Hudson having a pilot's license of any nature. Hudson himself testified that the claims adjustor, acting on

---

**8.** In *Trenholm v. Ratcliff,* 646 S.W.2d 927 (Tex. 1983), the court used the term "conscious indif- ference" rather than "gross negligence."

behalf of National Union, had not acted unreasonably.

Furthermore, delays or refusal to pay are not unreasonable where there is a legitimate question of policy construction. *Taylor v. Commercial Union Ins. Co.,* 614 F.2d 160 (8th Cir.1980); *Tyber v. Great Central Ins. Co.,* 572 F.2d 562 (6th Cir. 1978). If National Union had presented a strained and unconscionable interpretation of policy coverage, it would not have justified its failure to pay. The matter of simultaneous flight instructor-student piloting under the terms of the policy is a case of first impression in the State of Texas. Thus, National Union's position establishes the existence of a good faith legal controversy and, along with Hudson's false statements on the insurance application, gave National Union just cause for litigating this claim. *See Anderson v. Nationwide Life Ins. Co.,* 6 Kan.App.2d 163, 627 P.2d 344 (Kan.Ct.App.1981).

Hudson also contends that matters involving the storage of the vehicle show that National Union acted maliciously or with gross negligence. The storage on the damaged aircraft was initially paid by National Union, but Hudson testified that he recalled that some of the storage charges were applied against the airplane when it was sold for salvage. Hudson testified that at the request of the insurance companies,, the avionics were removed from the airplane to be secured. He further testified that the manager of Pan Air in New Orleans told him that "the airplane had been vandalized and the avionics were no longer available." National Union did not prevent Hudson from selling the plane as salvage and the account is vague about National Union's conduct concerning the avionics. There was no testimony that National Union was aware that the plane had been vandalized or that the avionics had been stored in an unsafe place. None of the evidence about the storage of the aircraft shows that National Union acted with bad faith or maliciously or with gross negligence. Furthermore, the inquiry to the jury asked only about National Union's conduct in delaying or failing to pay Hudson's claim. There was no inquiry about National Union's conduct with respect to the salvage.

We find no evidence that National Union breached its duty of good faith or that National Union acted maliciously or in a grossly negligent manner.

We reform the judgment of the trial court by deleting the award of exemplary damages in the amount of $75,000. As reformed, the judgment of the trial court is affirmed.