**POWELL VALLEY ELECTRIC COOP-ERATIVE, INC., Plaintiff,**

v.

**UNITED STATES AVIATION UNDER-WRITERS, INC., et al., Defendants.**

**Civ. A. No. 680.**

United States District Court
W. D. Virginia,
Abingdon Division.

Dec. 11, 1959.

---

1. Shippers' Car Supply Committee v. Interstate Commerce Comm., D.C.D.Or., 1958, 160 F.Supp. 939, 943.

Joseph N. Cridlin, Jonesville, Va., for plaintiff.

Robert B. Davis, Bristol Va., for defendant Phoenix Insurance Company.

Fred C. Parks, Abingdon, Va., and Wicker, Baker & Goddin, Richmond, Va., for all other defendants.

THOMPSON, Chief Judge.

This is an action by Powell Valley Electric Cooperative, Inc., Jonesville, Virginia, herein referred to as "plaintiff," against numerous insurance companies as defendants, herein referred to as "defendants."

The defendants have moved for summary judgment upon the pleadings, depositions, admissions, exhibits, stipulations, and the record at large.

The facts are as follows:

On March 15, 1958, the defendants insured in the sum of $40,000 a certain aircraft known as Bell 47 G–2 helicopter owned by the plaintiff, against damage or destruction for a period of one year. On April 28, 1958, the insured aircraft, while in flight, crashed. It was demolished, and David L. McNeil, plaintiff's manager, an unlicensed pilot in the aircraft, was killed. The only other person in the aircraft was John J. Ryan, a licensed pilot, employed by the plaintiff.

The parties have agreed that if plaintiff is entitled to recover, it is entitled to recover the sum of $35,500.

Item 8 of the Declarations in the policy expressly provides that the policy applied only while the aircraft was being used for "power line patrol and aerial spraying of power line right-of-ways."

Item 9 of the Declarations in the policy provides as a condition of "in-flight" coverage that coverage:

"shall apply only while the aircraft is being operated by John J. Ryan, commercial certificate No—

1248550 with proper rating as required by the C. A. A. for the flight involved."

The policy contained the following Exclusions:

"This policy does not cover (a) * * * while the aircraft is * * (3) used for instruction * * * (4) operated while in flight by other than the pilot specified in Item 9 of the Declaration."

The aircraft was equipped with dual controls, and on the day it crashed, Ryan and McNeil were patrolling and inspecting the plaintiff's power lines. About noon, they landed at Morristown, Tennessee to refuel. When flight was resumed, Pilot Ryan made a normal take-off, and when he had lifted the aircraft to an elevation of approximately 100 feet, he took his hands off the "stick" and turned the controls over to McNeil, as was his custom on former flights when giving McNeil instructions in helicopter piloting.

When McNeil took over the controls, the helicopter was in a safe and sound position and condition. McNeil was then the pilot of the aircraft and in complete control of it. McNeil piloted the aircraft in the same direction of the flight and gained a little more altitude, and then undertook to make a very steep right-hand turn. As he was doing so, the helicopter started sliding into the turn and started losing altitude. Pilot Ryan became alarmed, got back on the controls, and made an effort to right the helicopter. He was able to get it almost straightened out prior to the crash, but the vertical descent was too great, and the helicopter was demolished upon impact with the ground.

When Pilot Ryan undertook to take over the controls from McNeil, the helicopter was in a "precarious or dangerous" condition. Ryan was unable to extricate the aircraft from its perilous condition.

Ryan had considerable experience as a helicopter instructor, and while on other flights in this aircraft had turned over

the controls to McNeil and had given him pilot instructions. Ryan stated that when an instructor was teaching one to become a pilot of a helicopter it was wise to let the student pilot develop confidence in his skill at the controls. He stated that

\ "If a student feels that the instructor pilot will get on the controls as soon as he does something wrong, then that would tend to make him feel that every time in the future he does something wrong, there would always be somebody to help him out. * * * If you tend to get on the controls every time something is wrong, then you would undermine the self-assurance of the student, and on the other side, if you get on the controls a little bit too late, you might not be able to straighten up the mistake, which is particularly true in helicopters."

When Pilot Ryan was asked in his deposition if on this particular occasion he got back on the controls just a little bit too late, he replied:

"It is possible that I got on the controls a little bit too late; it is also possible that maybe I got on the controls in time, and tried to straighten the aircraft out of the turn too abruptly, which aggravated the steep turn condition in which the helicopter was at the time."

The defendants contend when the crash occurred that the policy was not in effect. They say that when McNeil took over the controls and began to pilot the aircraft and use it for a forbidden purpose, the insurance coverage was immediately suspended under the Declarations of the policy and the Exclusion provisions hereinbefore quoted, and that the coverage did not reattach before the crash.

The plaintiff admits the coverage was suspended during the time the helicopter was being piloted by McNeil and during the time it was being used for instructional purposes. However, the plaintiff contends that notwithstanding the fact that the aircraft was maneuvered into a dangerous and precarious condition while being piloted by McNeil and while being used for instructional purposes, that when Ryan again took over the controls from McNeil in an effort to right the aircraft, the helicopter was at that moment operated by the pilot named in the insurance policy and was so operated at the time of the crash. On this basis, the plaintiff contends that the coverage was restored.

█  When a loss is claimed under a policy of insurance after the coverage has been suspended by a breach of its expressed provisions, the insured must prove that the coverage has reattached and that the loss was sustained while the policy was in force.

The language of the policy is clear and unambiguous; it requires no judicial construction.

█  It is well settled that when the coverage of an insurance policy is validly suspended that the coverage is not reinstated if anything has taken place while the insurance was suspended that would increase the insurer's risk of loss. In the case of Fidelity-Phenix Fire Ins. Co. of N. Y. v. Pilot Freight Carriers, Inc., 4 Cir., 1952, 193 F.2d 812, 817, 31 A.L.R.2d 839, in deciding the issue there involved which was strikingly similar to the issue here involved, Judge Soper stated:

"* * * but the question for our determination is whether the facts justify the restoration to full vigor of a policy which had been suspended during a breach of the contract. Manifestly such a revival should not and cannot take place unless nothing has happened in the meanwhile to increase the insurer's risk of loss."

See also Travelers Protective Ass'n of America v. Prinsen, 1934, 291 U.S. 576, 54 S.Ct. 502, 78 L.Ed. 999; Welborn v. Wyatt, 1940, 175 Va. 163, 7 S.E.2d

99; Cartos v. Hartford Acc. & Indem. Co., 1933, 160 Va. 505, 169 S.E. 594.

In this case, it cannot be successfully contended that nothing had happened while the coverage was suspended that would increase the insurer's risk. While the coverage was suspended, the helicopter was maneuvered into a precarious crisis from which it could not be saved. During the time the coverage was suspended, the helicopter was operated by a forbidden pilot into such an uncontrollable position that it alarmed Ryan, the licensed pilot; it was in such perilous position when the licensed pilot again took over the controls that the crash was inevitable, as shown by the fact that the licensed pilot was unable to regain control of it.

Plaintiff argues that the crash was caused either by some malfunction of the aircraft or through some "pilot error" by Ryan in his effort to right the helicopter and prevent the crash. And it contends the crash did not result from the increased hazards which occurred while the coverage was suspended. This reasoning must be rejected. It matters not what caused the crash if the cause developed while the coverage was suspended and the cause was not eliminated or corrected before the crash.

The insurance coverage could not revive until such time as Ryan had taken over the controls and had brought the helicopter into the same safe and sound condition of flight that it was in when McNeil became the pilot. When Ryan returned to the controls, the aircraft was not in the safe condition it was when he turned the controls over to McNeil, and Ryan was never able to get the aircraft in such safe condition before the crash. It follows that the insurance could not reattach. See Travelers Protective Ass'n of America v. Prinsen, supra; Welborn v. Wyatt, supra; Cartos v. Hartford Acc. & Indem. Co., supra.

The motion is granted, and an order will be entered dismissing the case at the cost of the plaintiff.