Charles **MARSHALL** et al., Appellants,

v.

The **PEERLESS INSURANCE COMPANY** et al., Appellees.

Court of Appeals of Kentucky.

Jan. 26, 1968.

As Modified on Denial of Rehearing June 7, 1968.

O. T. Hinton, Pikeville, for appellants.

E. R. Hays, Baird & Hays, Jack T. Page, Pikeville, for appellees.

OSBORNE, Judge.

This action involves the right of the owners of an aircraft to recover under a collision insurance policy for damages incurred when the craft overshot a landing and went off the end of the runway. Appellee, the Peerless Insurance Company, as insurer of the aircraft insists that it is not liable for the damages because of an exclusion in the policy. The pertinent facts developed on the trial of the action are as follows:

Charles Marshall, Maurice Newsom and James Thacker purchased a Cessna 182 air-

craft. They procured from Peerless a policy covering damages to the aircraft incurred as a result of its operation. Section 7 of the policy provided:

"7. Pilots: It is a condition hereof that such 'Flight' coverage as is provided by this policy applies only while the aircraft is being operated by the following specified pilot(s) while holding proper certificate(s) and rating(s) as required by the Federal Aviation Agency for the flight involved:

"(a) Charles Marshall; Maurice J. Newsom; James Thacker, as student pilot * * *."

"(c) Any private pilot or any commercial pilot, who has logged solo or pilot in command flight time of at least 300 total hours during the past 10 years; 50 hours in aircraft of like kind of which 10 total hours shall have been logged during the past 90 days."

James Thacker was licensed as a student pilot. Student pilots under the rules and regulations of the Federal Aviation Agency cannot act as pilot in command of an aircraft while carrying passengers. On April 17, 1965, Thacker agreed to fly a friend, Hap Early, and his two daughters, to Huntington, West Virginia, on the following day for a dental appointment. Another friend, Bill Davis, who also owned a plane, decided he would like to go along. This made five people, which was more than the aircraft could accommodate, and all parties decided to take Davis's plane, also. When it was ascertained that Davis would take his plane, Thacker invited Sgt. Owen C. Hammonds, who was an army recruiter and a duly licensed and qualified pilot, to go along in his aircraft as command pilot. On the trip to Huntington, Early and the two girls flew with Davis in his plane. Thacker and Hammonds flew in the Thacker plane. On the return trip, Early rode with Davis and the two girls returned with Thacker and Hammonds. The Thacker plane was equipped with two complete sets of controls, one on either side. On the return trip, which is the one here under consideration, Thacker and Hammonds alternated in manipulating the controls. Upon approaching the landing strip in Pikeville, where the questioned collision occurred, Thacker was manipulating the controls with the intention of landing the plane, while Hammonds was monitoring the other set of controls with the intention of lending assistance where need be. The landing was normal until the plane almost touched down. However, in the last few seconds the wind changed 180°, the plane picked up speed accordingly and raised 15 to 20 feet into the air. Thacker was of the opinion that he might overshoot the field so he closed the carburetor heat and advanced the throttle with the intended purpose of going around the field again. Hammonds decided that the landing could be made and that there might be danger in going around. He accordingly took control of the plane, closed the throttle, and made the landing. But, by this time the plane was approaching the end of the runway and because of the added momentum due to the shift of the wind and a wet landing surface, he was unable to stop it. The plane left the runway, collided with a fence, and was damaged in the amount of $6657.28. There are other questions involved in the appeal, but we believe the one that will be dispositive of all issues is whether an exception in the policy precludes recovery. The exception is as follows:

"This policy does not apply while the aircraft is in flight and operated by a student pilot unless such flight or attempted flight is with the specific advance approval of and under the supervision and control of an F.A.A. Certified Commercial Instructor Pilot."

Appellee insists that this exception applies to the circumstances above outlined and it is therefore not responsible for the repair of the aircraft. We can not agree with this contention for two reasons. The Federal Aviation Regulations[1] adopted by the

---

1. Hereafter will be cited as F.A.R.

**192**

Federal Aviation Agency govern the operation of all aircraft within the continental United States. The pertinent part of these regulations governing this flight is as follows:

"F.A.R. § 61.73. General limitations.

(a) Except as provided in paragraph (b) of this section, a student pilot may not act as pilot in command of an aircraft—

(1) That is carrying a passenger;

(2) That is on an international flight;

(3) For compensation or hire;

(4) In furtherance of a business; or

(5) Other than the make and model endorsed on his certificate by his certificated flight instructor."

"F.A.R. 61.101.

(1) A private pilot may, for compensation or hire, act as pilot in command of an aircraft in connection with any business or employment if the flight is only incidental to that business or employment and the aircraft does not carry passengers or property *for compensation or hire*."[2] (Emphasis added).

"F.A.R. 91.3 Responsibility and authority of the pilot in command.

(a) The pilot in command of an aircraft is directly responsible for, and is the final authority as to, the operation of that aircraft.

(b) In an emergency requiring immediate action, the pilot in command may deviate from any rule of this subpart or of Subpart B to the extent required to meet that emergency.

(c) Each pilot in command who deviates from a rule under paragraph (b) of this section shall, upon the request of the Administrator, send a written report of that deviation to the Administrator."

■ As the policy provides coverage if any one of the pilots designated under Section 7–c was operating the aircraft at the time of the accident, we are of the opinion appellee is liable. It is not questioned but what Hammonds met the requirements of Section 7–c. Under the regulations he was pilot in control of the aircraft, therefore its legal operator. He had a full set of controls and complete authority to use them. We believe this takes the flight from under the exclusion insisted upon by appellee.

■ Our second reason for believing appellee liable is simply this: Thacker testified that Hammonds was operating the aircraft at the time of the accident.[3]

---

2. The prohibition here is against carrying passengers for *compensation or hire*. This is the only restriction we find in the regulation upon a private pilot.

3. "Q. 72. By that do I understand you to mean you didn't think you were going to make it and you had to go up and come back again?"
"A. Then I decided it would be safer to go around than to roll all the way to the end of the runway, and I pushed the carburetor heat in with my thumb and opened the throttle with my hand, it has a little control on the throttle control, tightens up the shaft to keep it from working out, and I did that in about one motion, dropping my hand to the nose trim. The airplane was trimmed for a landing nose high and I had hold of the control throttle with my left hand, and as I said, I gave the airplane full power, the prop control was in and locked, so therefore we had full power on the prop and I pushed the throttle all the way in and we had full throttle power on the engine and at that time, almost instantaneously, Mr. Hammon's decision was that we couldn't make it and chopped the throttle, or pulled the throttle back out, which caused the airplane to just about quit flying, and he had control on the right, and whenever we both had control and got it on the ground below the road, which is approximately 500' below the fence, and if the grass hadn't been wet could have stopped, but the grass was wet and made it difficult to stop coming in hot, or fast, and the result was we went across a bank into a fence, not going completely through it, doing the damage they put on these repair bills, and that's the extent of it up that point." Thacker's testimony, Q. 72, T.E. pp. 36 & 37.

Hammonds testified that at the time of the accident he was operating the aircraft.[4] When there is a pilot in the aircraft with access to a full set of controls, who meets the requirements of the policy, then in our opinion the requirements as to the operator of the aircraft are met. The presence of such pilot has long been accepted as satisfying the requirements of the Federal Air Regulations prohibiting a student pilot from carrying passengers, though at times certain officials of the Federal Aviation Agency have viewed these rules askance. In discussing this matter, the editor of a trade magazine, THE FLYER, points out the following incident:

"This pilot wasn't as lucky as another jump plane pilot we know, who tangled with the FAA and won. He was a student pilot and was nabbed by an FAA inspector after landing from hauling a load of skydivers aloft. 'What,' the FAA man demanded, 'were you doing carrying passengers on a student license?' "

" 'I was perfectly legal,' the pilot said, as the inspector reddened. 'You see that third skydiver to come down? He has a private license and as long as he's on board, I'm legal even if I'm flying the plane. He jumps out last, so then I'm legal again, flying the plane solo!' " THE FLYER, January, 1968, Vol. 7 No. 10.

Hammond's presence at the controls of the aircraft, having satisfied the provisions of the Federal Aviation Regulations made him pilot in command of the aircraft and therefore legally responsible for its operation. For this reason and for the further reason that he was actually operating the aircraft at the time of the accident, it is our opinion that the exception in the policy does

not apply. Therefore, this case is remanded back to the trial court with directions to enter judgment for the plaintiffs in accord with the provisions of the policy.

The judgment is reversed.

WILLIAMS, C. J., and HILL, MONTGOMERY, MILLIKEN and PALMORE, JJ., concur.

STEINFELD, Judge (dissenting).

I respectfully dissent because I would hold that Thacker, an owner of the plane, was piloting in violation of the exclusion of the policy. Thacker's own testimony, which is confirmed by the answers of Hammonds, clearly shows that Thacker and not Hammonds was the operator. Thacker was asked and answered:

"Q. You were in command when landing the plane?

"A. I had hold of the controls and Mr. Hammonds had access to them from the seat on his side.

"Q. But you actually manipulated it in making the landing until such time as Mr. Hammonds decided you were in trouble and then he attempted to do something about it?

"A. Up to that time I was manipulating the controls, Yes, sir."

The owners would have us say that one of them could set in motion the events which caused the damage but be free from the consequences because Hammonds took control at the last moment before the damage occurred. This we should not do.

---

4. "Q. 28. You were in control when it struck and crashed and hit?"

"A. Yes, sir; I was." Hammond's testimony, Q. 28, T.E. p. 62.