NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., Petitioner,

v.

HUDSON ENERGY COMPANY, INC., Respondent.

No. C–9419.

Supreme Court of Texas.

June 19, 1991.

Charles H. Smith, John W. Moore, Dallas, for petitioner.

Jack N. Price, Austin, Lynn Patton, Longview, for respondent.

## OPINION

GONZALEZ, Justice.

This case involves the interpretation of an insurance policy on an aircraft. Adam Hudson, a student pilot, and Rodney Bishop, his instructor, took an instruction flight on a plane that was insured by National Union Fire Insurance Company of Pittsburgh, Pennsylvania. The plane flipped over when it landed and was damaged. Hudson Energy Company, Inc., the owner of the plane, filed suit against its insurer, National Union Fire Insurance Company of Pittsburgh, Pennsylvania. A jury found that National Union had improperly denied coverage and awarded Hudson Energy actual damages, exemplary damages, and attorney's fees. The court of appeals struck the award of exemplary damages and otherwise affirmed the judgment of the trial court. 780 S.W.2d 417. We affirm the judgment of the court of appeals.

On May 23, 1980, Hudson, president of Hudson Energy Company, Inc., purchased a Cessna P-210 aircraft from Johnny Walker, owner of Eastex Aviation. The plane was a single engine model equipped with dual controls. At the time of purchase, Hudson sought Walker's help in obtaining insurance. Walker contacted James Ragsdale, an employee of Cooper Aviation Insurance. According to Hudson, Walker was the only one to have direct contact with Ragsdale. Hudson submitted an application for insurance showing he was a student pilot. In a letter to Hudson dated June 10, 1980, Ragsdale explained that the quoted insurance premium was based on an understanding that Hudson was a private pilot and that such information was necessary before a policy could be issued. Hudson then completed a new application indicating he was a private pilot.[1] An insurance binder was issued on May 30, 1980, and the policy was effective for one year beginning on May 23, 1980.

On July 13, 1980, Hudson, his flight instructor (Rodney Bishop), and a passenger flew VFR (visual flight rules) from Longview, Texas to New Orleans, Louisiana. Hudson was at the left hand controls and Bishop was at the right hand controls. Hudson flew the plane throughout the flight, which was uneventful until the plane began its final approach. The control tower granted permission to land but Bishop took control when he noticed an approaching helicopter. After they gained altitude to ensure a safe distance, the controller instructed the plane to land on a different runway. This change resulted in a steeper descent to the runway. Bishop complied with the instruction and established a proper flight path. Bishop then returned control of the plane to Hudson.

Upon landing the plane began to bounce. Bishop grabbed his set of controls and,

---

1. Hudson claims that in the mid-1960's he had taken flying lessons but the extent of this prior training is disputed. According to Hudson, he successfully completed the necessary requirements to become a private pilot. However, Hudson was unable to produce a Federal Aviation Administration certificate confirming this and National Union claims that Hudson actually failed the necessary tests and is nothing more than a student pilot. Hudson claims that when he completed the private pilot's training he gave his student certificate to his instructor who then typed the words "private pilot" across the top. It is this certificate that Hudson offers as evidence of his successful completion of pilot training.

along with Hudson,[2] attempted to regain control of the plane. The pilots regained control but as it continued down the runway, for an unexplained reason, it began to veer off the paved runway and ride along the grassy edge. As it continued down this path, the front nose gear sank in soft sod causing the nose gear to sheer off and the plane to flip over.

Hudson Energy filed a claim under the insurance policy to recover for damage to the plane. National Union denied coverage on the basis that Hudson was not qualified as a private pilot and the policy did not cover simultaneous control of the plane by two pilots. Hudson Energy filed suit alleging that National Union was improperly applying the policy exclusions and had breached the duty of good faith and fair dealing. After a jury trial, the trial court rendered judgment on the verdict for Hudson Energy and awarded $114,440 as actual damages, $75,000 in exemplary damages for breach of the duty of good faith and fair dealing, and $40,000 in attorney's fees. The court of appeals affirmed the award of actual damages and attorney's fees but deleted the award of exemplary damages, finding as a matter of law, that National Union had not acted in bad faith when it denied the claim. 780 S.W.2d 427.

The policy contained the following provisions:

## EXCLUSIONS

This policy does not apply:

    \*     \*     \*     \*     \*     \*

2. To any insured while the aircraft is in flight

  a. if piloted by other than the pilot or pilots designated in the declarations;

## DECLARATIONS

  \*     \*     \*     \*     \*     \*

ITEM 5. When in flight the aircraft will be piloted only by:

As endorsed

### ENDORSEMENT NO. 1

IT IS AGREED THAT Item 5 of the Declarations—When in flight the aircraft will be piloted only by—is completed to read as follows:

> Adam R. Hudson provided he is a private pilot properly certified by the FAA having a minimum of 213 logged flying hours, and receives 15 hours of dual instruction from a properly certified flight instructor prior to solo; *or*
>
> *Any private or commercial pilot with an instrument rating properly certified by the FAA having a minimum of 750 logged flying hours, 150 of which are in retractable gear aircraft, including 15 hours in the make and model aircraft.*

(Emphasis added). Neither party pled that the insurance policy was ambiguous.

On appeal to this court, National Union asserts that, as a matter of law, it is entitled to judgment because the terms of the policy prohibit simultaneous piloting by a qualified pilot and an unqualified pilot. National Union asserts that the cause of the crash occurred while Hudson was in control of the plane while Hudson maintains that the cause of the crash occurred while both he and his instructor were at the controls. National Union argues that under either scenario the policy does not cover the risk of piloting by an unqualified pilot and the jury found that Hudson was not qualified.[3] Thus, the sole issue before

---

2. It is uncertain whether both men attempted to control the plane or whether Hudson relinquished control to Bishop. Bishop testified that he knew that he was controlling the plane because normal practice is for the instructor to override the student pilot. He further testified that as events were occurring he believed that Hudson was also employing the same maneuvers as he in an attempt to gain control of the plane.

3. The jury found that "The aircraft was not in flight piloted by other than a pilot or pilots designated in the declarations" (question 1); that at the time of the loss the plane "was not in flight piloted by a pilot lacking proper certificate, qualifications and rating" (question 2); that "the aircraft was being used for a purpose designated in the policy" (question 3) and that National Union was not induced to issue the policy by any misrepresentations made by Hudson. (question 4).

this court is whether under this policy the accident was a covered risk.

■■■ Generally, a contract of insurance is subject to the same rules of construction as other contracts. *Barnett v. Aetna Life Ins. Co.*, 723 S.W.2d 663, 665 (Tex.1987). If the written instrument is worded so that it can be given only one reasonable construction, it will be enforced as written. *Puckett v. U.S. Fire Ins. Co.*, 678 S.W.2d 936, 938 (Tex.1984). However, if a contract of insurance is susceptible of more than one reasonable interpretation, we must resolve the uncertainty by adopting the construction that most favors the insured. *Barnett*, 723 S.W.2d at 667; *Ramsay v. Maryland Am. Gen. Ins. Co.*, 533 S.W.2d 344, 349 (Tex.1976); *Brown v. Palatine*, 89 Tex. 590, 35 S.W. 1060, 1061 (1896). The court must adopt the construction of an exclusionary clause urged by the insured as long as that construction is not unreasonable, even if the construction urged by the insurer appears to be more reasonable or a more accurate reflection of the parties' intent. *Glover v. Nat'l Ins. Underwriters*, 545 S.W.2d 755, 761 (Tex.1977); *Continental Casualty Co. v. Warren*, 152 Tex. 164, 254 S.W.2d 762, 763 (1953). In particular, exceptions or limitations on liability are strictly construed against the insurer and in favor of the insured. *Ramsay*, 533 S.W.2d at 349; *Continental*, 254 S.W.2d at 763. This our inquiry is whether the construction advanced by Hudson is a reasonable interpretation. *Barnett*, 723 S.W.2d at 666. National Union argues that the policy clearly excludes coverage when an unqualified pilot is at the controls, even if a qualified pilot was simultaneously piloting the craft. Hudson argues that the policy merely ensures that a qualified pilot is at the controls, and it does not matter if a student pilot is also at the controls.

■■■ Neither the exclusion clause nor the declaration clause clearly exclude simultaneous piloting by a qualified pilot and an unqualified pilot. These clauses of the policy provide that the plane will be "piloted only by" either Adam R. Hudson "provided he is private pilot" *or* any qualified private or commercial pilot, and exclude coverage when the aircraft is "piloted by other than the pilot or pilots designated in the declarations." This language does not expressly address the situation where the aircraft is piloted by a qualified pilot *and* by a pilot "other than" a qualified pilot. It is not clear that the exclusion clause must be interpreted to exclude coverage when the plane is piloted by several pilots, *any one of whom* is unqualified rather than only when the plane is piloted by several pilots, *none of whom* is qualified. Furthermore, it is reasonable to conclude that Bishop, the instructor, was acting as the "pilot" of the aircraft throughout the entire flight because he was effectively and ultimately in charge of the operation of the plane.

An intent to exclude coverage must be expressed in clear and unambiguous language. National Union knew that the plane had dual controls. If National Union wanted to exclude simultaneous piloting from the scope of coverage, then it was incumbent upon it to expressly and clearly state the exclusion in the policy. Having failed to do so, National Union cannot now complain.[4]

---

4. National Union asserts that *Master Feeders II, Inc. v. United States Fire Insurance Co.*, 15 Av. Cas. (CCH) ¶ 18,420 (D.Kan.1980), *aff'd*, 17 Av. Cas. (CCH) ¶ 18,205 (10th Cir.1983) and *Powell Valley Electric Cooperative, Inc. v. United States Aviation Underwriters, Inc.*, 179 F.Supp. 616 (W.D.Va.1959) support its position. The *Master Feeders* court held that the policy did not cover simultaneous piloting by an unqualified and a qualified pilot. *Id.* at 18, 424. The court construed the policy to cover piloting by only one pilot at a time. *Id.* In its reasoning, the court stated:

   [T]here is an absolute exclusion of the coverage unless a qualified pilot is the *only* operator of the plane. Read together, [the exclusions] provide coverage *only* when a qualified pilot is operating the aircraft *and not then* if anyone else is operating the plane, too.

*Id.* We disagree with this interpretation, which could result in the unreasonable denial of coverage even in a situation where two qualified pilots are operating an airplane equipped with dual controls. Carrying this reasoning to its logical extreme, under similar language in a policy, there would never be coverage in any emergency situation where there are two pilots at the controls attempting to bring a plane under control.

Our analysis is similar to that applied in *Marshall v. Peerless Insurance Co.*, 428 S.W.2d 190 (Ky.1968). In *Marshall*, a student pilot was flying the plane while a qualified pilot sat at the other set of controls to assist if needed. As the plane was landing, the wind shifted and the student pilot decided to abort the landing. The qualified pilot believed the landing to be safe and seized control and attempted to land. *Id.* The plane overshot the runway and sustained substantial damage. *Id.* The insurance company refused to cover the loss because the policy exclusions provided that coverage did not exist when the plane was operated by a student pilot without the presence of an F.A.A. flight instructor. *Id.*

The court rejected this argument reasoning that the qualified private pilot sitting at the controls was the pilot in command. *Marshall*, 428 S.W.2d at 193. The plane was not *operated by* a student pilot; it was piloted by the qualified private pilot. *Id.* With reference to the private pilot, the court said:

> He had a full set of controls and complete authority to use them.... When there is a pilot in the aircraft with access to a full set of controls, who meets the requirements of the policy, then in our opinion the requirements as to the operator of the aircraft are met.

*Id.* at 192–93.

In summary, we agree with the court of appeals that the language in the policy covers this situation. For all of the foregoing reasons, the judgment of the court of appeals is affirmed.

Concurring opinion by HECHT, J., joined by PHILLIPS, C.J., and COOK and CORNYN, JJ.

HECHT, Justice, concurring.

I do not agree with the Court that the decisive question in this case is whether the

policy issued by National Union covers damage to the insured airplane when in flight piloted, simultaneously, by both a pilot who meets the restrictions in the policy declarations and another pilot who does not. The jury found, in effect, that there was only one pilot of the plane when it was damaged, and there is evidence to support that finding. The Court's discussion regarding the effect of joint pilots on coverage under the policy is thus only dicta.

The evidence in this case does not establish conclusively who was piloting the airplane at the time it was damaged. Hudson and Bishop were both seated behind full controls, and in the course of landing the plane and before it came to a stop, each of them was able to, and did, exercise full, exclusive control of the plane. Hudson testified that he was piloting the plane when it landed on the nose wheel, that Bishop took over to bring it down on the main gear, and that he, Hudson, then resumed control of landing the plane. Bishop testified that from the time the plane started to veer off the runway until it turned over he took the controls and did not relinquish them to Hudson. There is also evidence, however, that Hudson and Bishop shared control of the plane at various critical times. For example, Hudson testified that "the airplane was being operated at the time of the loss by both Rodney Bishop and myself." In short, the jury might have concluded from the evidence that at the time the mistake occurred which led to the ultimate damage to the plane, it was being piloted by Hudson solely, by Bishop solely, or by both simultaneously.

The jury found that at the time of the loss "[t]he aircraft was not in flight piloted by other than a pilot or pilots designated in the [policy] declarations." Hudson, because he did not meet specified qualifica-

---

In *Powell Valley*, the exclusionary language provided that coverage was extended "only while the aircraft is being piloted by John T. Ryan." *Id.* at 617. On a routine flight, Ryan allowed another employee who he was training to fly to take control of the craft and it crashed.

This case is distinguishable from the case at bar. In *Powell Valley*, the policy only covered

one specific pilot. The exclusionary language made it unmistakably clear that only one individual person was insured, John T. Ryan. The language does not apply to the present situation where the owner *or* any other qualified pilot could fly the craft.

tions, was not within the declarations; Bishop was. If the jury believed that Hudson was piloting the plane at the time of the loss, either by himself or together with Bishop, then it could not have made the finding it did. Rather, it would have had to find that the aircraft *was* piloted—whether solely or jointly—by other than a pilot designated in the declarations, namely, Hudson. The jury's finding, supported by some evidence, resolves the factual controversy of who was piloting the plane: Bishop.

If Bishop was the sole pilot of the plane at the time it was damaged, then the damage was covered under the policy. It is unnecessary to decide, as the Court attempts to do, whether coverage would also exist if Bishop and Hudson were joint pilots. Accordingly, I join the Court in its judgment but not in its opinion.

PHILLIPS, C.J., and COOK and CORNYN, JJ., join in this concurring opinion.