**URETHANE INTERNATIONAL PRODUCTS dba Offshore Joint Services, Appellant,**

v.

**MID–CONTINENT CASUALTY COMPANY, Appellee.**

**No. 10–04–00177–CV.**

Court of Appeals of Texas, Waco.

Feb. 1, 2006.

Rehearing Overruled Feb. 21, 2006.

William F. Harmeyer, W.F. Harmeyer & Associates, Houston, for appellant.

John Engvall Jr., Engvall & Hlavinka, Houston, for appellee.

Before Chief Justice GRAY, Justice VANCE, and Justice REYNA.

## OPINION

TOM GRAY, Chief Justice.

This case involves the interpretation of an insurance contract, a question of coverage—the duty to defend. We reverse the trial court's determination that the pollution exclusion clause applies to the facts of this case.

### THE UNDERLYING CASE—THE TURNERS'S CASE

The following facts are taken from the allegations in relevant pleadings.

Curtis and Deborah Turner suffered personal injury and property damage while driving in Lake Charles, Louisiana. The cause of the damages was exposure to a chemical, MDI (Polymeric Diphenylmethane Diisocyanate). The chemical was

being hauled on a truck in containers provided by Offshore Joint Services. MDI spilled because a lid and/or gasket on the container was damaged, worn, and splitting and the lid could not be tightened properly. The Turners sued Offshore Joint Services and others for their injuries.

## BACKGROUND PROCEDURAL FACTS

Offshore Joint Services had a Commercial General Liability policy issued by Mid–Continent Casualty Company. Offshore notified Mid–Continent of the Turners's suit. Initially, Mid–Continent denied coverage. Ultimately, Mid–Continent assumed defense of the suit brought by the Turners. That suit has been settled.

Offshore brought this suit to recover its cost of defense prior to the time that Mid–Continent assumed the defense and settled the case. Mid–Continent asserted a policy exclusion as a defense to the duty to defend. If the exclusion is applicable, Mid–Continent had no duty to defend and is, therefore, not liable for the cost of defense incurred by Offshore.

The issue was tried to the court. The trial court rendered judgment that the pollution exclusion applied, and, therefore, Mid–Continent was not liable for the cost of defense. Offshore brings this appeal.

## POLLUTION EXCLUSION

Mid–Continent's defense against coverage rests entirely on the pollution exclusion clause of the general commercial policy. The exclusions portion of the policy generally provides the following exclusions:

2. Exclusions

This insurance does not apply to:

a. Expected Or Intended Injury

b. Contractual Liability

c. Liquor Liability

d. Workers' Compensation And Similar Laws

e. Employer's Liability

f. Pollution [set out below]

g. Aircraft, Auto or Watercraft

[The policy continues with exclusions through subsection "o."]

Only the Pollution exclusion is relevant to this case. The portion of the Pollution exclusion relevant to this case states:

This insurance does not apply to:

f. Pollution

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. [This subparagraph of the exclusion is then made inapplicable under certain conditions not applicable here.]

(b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

(c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any insured or any person or organization for whom you may be legally responsible; or

(d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with

such operations by such insured, contractor or subcontractor.

[This subparagraph of the exclusion is then made inapplicable under certain conditions not applicable here.]

(e) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

■ The focus of the dispute is what subparagraph f(1)(c) excludes from the insurance coverage. Before we proceed, however, we note that the word pollutants is in quotes in subsection f(1). This means it is a term defined elsewhere in the policy. The policy definition is:

15. "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

Offshore contends that subparagraphs f(1)(a), (d), and (e) apply to all pollutants, but that f(1)(b) and (c) apply only to pollutants that are waste.

To help focus on the language relevant to the underlying facts, the policy dispute can be reduced to a determination of which of the following accurately describes the exclusion from coverage:

I. This insurance does not apply to damages arising out of the escape of a chemical irritant which was transported by a covered person.

vs.

II. This insurance does not apply to damages arising out of the escape of a chemical irritant which was transported *as waste* by a covered person.

Because there is no dispute that the MDI that escaped out of Offshore's container was a chemical raw material used to make other products, in essence it was not waste, the description of the exclusion in II would not exclude coverage on the facts of this case.

The critical question then is whether "as waste" when used in f(1)(c) applies to each act that precedes it in the list, or whether it applies only to the act of being "processed."

### APPLICABLE LAW

■ "Whether an insurer in a liability policy is obligated to defend the insured is a question of law to be decided by the court." *State Farm Lloyds v. Kessler*, 932 S.W.2d 732, 735 (Tex.App.-Fort Worth 1996, writ denied).

### THE EIGHT CORNERS RULE

■ To decide this question, Texas courts use the "Eight Corners Rule." *National Union Fire Ins. Co. v. Merchants Fast Motor Lines*, 939 S.W.2d 139, 141 (Tex.1997). The "Eight Corners Rule" requires the reviewing court to compare the allegations made within the four corners of the underlying petition to the policy provisions and exclusions found within the four corners of the insurance policy. *Cluett v. Medical Protective Co.*, 829 S.W.2d 822, 829 (Tex.App.-Dallas 1992, writ denied). *See National Union Fire Ins. Co.*, 939 S.W.2d at 141–142.

■ The insurer has a duty to defend only when the facts alleged in the underlying petition, if assumed to be true, estab-

lish a liability that is covered under the policy. *Devoe v. Great Am. Ins.*, 50 S.W.3d 567, 570 (Tex.App.-Austin 2001, no pet.); *see National Union Fire Ins. Co.*, 939 S.W.2d at 141. If a petition does not allege facts within the scope of coverage, an insurer is not legally required to defend the suit against its insured. *Id.* Likewise, this means that if the facts alleged affirmatively negate coverage because of the application of a policy exclusion, an insurer is not obligated to defend the suit. The Texas Supreme Court has repeatedly held that it is the facts alleged in the underlying case, not the legal theories asserted, that determine whether or not there is coverage under the policy and/or a duty to defend. *See Farmers Texas Cty. Mut. Ins. Co. v. Griffin*, 955 S.W.2d 81, 83 (Tex. 1997); *Trinity Universal Ins. Co. v. Cowan*, 945 S.W.2d 819, 829 (Tex.1997); and *National Union Fire Ins. Co.*, 939 S.W.2d at 142.

### Construing the Petition

And where the underlying petition does not state facts sufficient to clearly bring the case within or without the coverage, the general rule is that the insurer is obligated to defend if there is, potentially, a case under the petition within the coverage of the policy. *Heyden Newport Chemical Corp. v. Southern General Ins. Co.*, 387 S.W.2d 22, 26 (Tex.1965). In other words, in case of doubt as to whether or not the allegations of a petition against the insured state a cause of action within the coverage of a liability policy sufficient to compel the insurer to defend the action, such doubt will be resolved in the insured's favor. *Id.*

An exception to this general rule occurs "[w]hen the petition in the underlying lawsuit does not allege facts sufficient for a determination of whether those facts, even if true, are covered by the policy."

*State Farm Fire & Cas. Co. v. Wade*, 827 S.W.2d 448, 452 (Tex.App.-Corpus Christi 1992, writ denied); *accord Gonzales v. American States Ins. Co.*, 628 S.W.2d 184, 186 (Tex.App.-Corpus Christi 1982, no writ). In this circumstance, "the evidence adduced at the trial in a declaratory judgment action may be considered along with the allegations in the underlying petition." *State Farm Fire & Cas. Co.*, 827 S.W.2d at 452; *accord Gonzales*, 628 S.W.2d at 186.

### Construing the Insurance Contract

"[I]f a contract of insurance is susceptible to more than one reasonable interpretation, [courts] must resolve the uncertainty by adopting the construction most favorable to the insured." *State Farm Fire & Cas. Co. v. Reed*, 873 S.W.2d 698, 699 (Tex.1994) (footnote omitted); *National Union Fire Ins. Co. v. Hudson Energy Co.*, 811 S.W.2d 552, 555 (Tex. 1991). "The Court must adopt the construction of an exclusionary clause urged by the insured as long as that construction is not unreasonable, even if the construction urged by the insurer appears to be more reasonable or a more accurate reflection of the parties' intent." *National Union Fire Ins. Co.*, 811 S.W.2d at 555. "In particular, exceptions or limitations on liability are strictly construed against the insurer and in favor of the insured." *Id.* "An intent to exclude coverage must be expressed in clear and unambiguous language." *State Farm Fire & Cas. Co.*, 873 S.W.2d at 699; *National Union Fire Ins. Co.*, 811 S.W.2d at 555.

In this case, there is no dispute that coverage for the underlying case exists except to the extent that it is excluded by subsection (c) of the pollution exclusion. Accordingly, this appeal concerns only the proper construction of the pollution exclusion, which Offshore asserts is not applica-

ble to the transportation of a chemical which is not "waste."

## APPLICATION

The trial was very brief. The only evidence introduced was the various petitions from the underlying suit by the Turners and the insurance policy. The attorneys argued the legal issue, the interpretation of the policy, but did not cite any authority interpreting the "as waste" portion of the policy exclusion to the trial court. The trial court rendered judgment that the exclusion applied, holding that "as waste" could only apply to "processed" and did not apply to "transported." We disagree.

We must review the language of the policy and give it a reasonable meaning. The problem here is that a simple reading of the policy does not yield a simple answer. Mid–Continent contends that to make "as waste" apply to the preceding terms, "transported, handled, stored, treated, [and] disposed of" would require the rewriting of the policy by requiring the inclusion of 10 additional words in the policy. It argues that Offshore is adding "as waste" after each of these five other terms referring to some action taken with regard to the chemical.

We find this argument unavailing. The phrase "as waste" is connected to all six terms in the same manner as the next phrase, "by or for any insured or any person or organization for whom you may be legally responsible," is connected to each of the six terms. If "processed as waste" were necessarily intended to be one action, and transported, handled, stored, treated, and disposed of were to be five other independent actions, thus limiting "as waste" only to the act of processing, the sentence structure could be modified to avoid any doubt. If the exclusion was intended to apply to only chemicals that

were processed as waste, then this subparagraph could have been written as:

Which are or were at any time processed as waste, disposed of, transported, handled, stored, or treated by or for any insured. . . .

Further, it does not seem logical to exclude the processing of something as waste from coverage but not exclude the treatment of something as waste. Because treatment and process can frequently involve the same type of action, this distinction would inevitably lead to coverage disputes over whether waste going through a particular procedure was a treatment or process.

Additionally, when we look at the immediately preceding subparagraph of the pollution exclusion, we note that while it relates to premises, it excludes from coverage the "handling, storage, disposal, processing or treatment of waste." We recognize that subsection (b) is limited by its relationship to particular premises. However, subparagraph (c) is limited in a similar fashion to particular actors. In subparagraph (b), the terms process and treatment are in a different sequence, with the phrase "of waste" following "treatment" rather than "processing." This adds support to the interpretation offered by Offshore that "as waste" in subparagraph (c) applies to all of the action terms preceding it in the sentence and not just the immediately preceding term—processed.

## CONCLUSION

The interpretation of this subparagraph offered by Mid–Continent is not unreasonable, but neither is the interpretation offered by Offshore. Accordingly, applying the rules of construction to interpret the policy in favor of coverage and against the insurer, we construe subparagraph (c) as limited to pollutants that are included

within the definition of waste. Because it is undisputed that the chemical at issue in this case, MDI, was not waste, subparagraph (c) does not exclude coverage. Accordingly, we hold that Mid–Continent was obligated to defend Offshore against the Turners's claims. We reverse the judgment of the trial court and remand this proceeding to the trial court for further proceedings consistent with this opinion.