IN THE SUPREME COURT OF TEXAS








IN THE SUPREME COURT OF TEXAS
 
════════════
No. 08-0073
════════════
 
Progressive County Mutual 
Insurance Company, Petitioner,
 
v.
 
Regan Kelley, 
Respondent
 
════════════════════════════════════════════════════
On Petition for Review from the
Court of Appeals for the Tenth District of 
Texas
════════════════════════════════════════════════════
 
 
PER CURIAM
 
 
            
In this case, we consider whether two documents issued by an insurance 
company constitute two separate insurance policies or a single policy. We hold 
that this is a fact question and remand to the trial court.
            
Regan Kelley was struck by a car while riding her horse. Medical expenses 
for her injuries are alleged to have exceeded $1 million. After receiving 
$100,000 in benefits from the motorist’s insurer, Kelley made a claim with 
Progressive County Mutual Insurance Company (“Progressive”) for underinsured 
benefits under a policy issued to her parents, which also covered Kelley. At the 
time of the accident, Kelley was an adult living with her parents. Progressive 
paid the policy limit of $500,025. To cover the remaining damages, Kelley then 
made a claim under an alleged second policy with a limit of $500,025, also 
issued by Progressive. At the time of the accident, Progressive insured five of 
the Kelleys’ vehicles. Four vehicles were listed on a 
two-page document, and the fifth was listed on a separate two-page document. 
However, the documents had separate policy numbers. Nevertheless, Progressive 
denied there was a second policy and refused to make any additional 
payments.
            
Kelley sued Progressive for breach of contract and Insurance Code 
violations, while Progressive sought a declaratory judgment requiring it to 
pay the maximum policy limit amount under only one 
policy. The suits were consolidated, and both parties filed motions for summary 
judgment, presenting two issues: (1) whether Progressive issued one or two 
policies, and (2) if two policies, whether Progressive’s “Two or More Auto 
Policies” anti-stacking provision,[1] found within each policy, limited 
recovery to one policy’s maximum limits. The trial court granted Progressive’s 
motion and denied Kelley’s motion, without specifying on which ground. The court 
of appeals reversed and rendered judgment in favor of Kelley, holding that (1) 
Kelley established as a matter of law that Progressive issued two separate 
policies, and (2) Progressive’s “Two or More Auto Policies” provision violated 
public policy, as it had the same effect as an “other insurance” provision 
previously struck down by this Court. ___ S.W.3d at ___; 
see, e.g., Amer. Liberty Ins. Co. v. Ranzau, 481 S.W.2d 793, 797 (Tex. 1972). Thus, 
the court of appeals held that Kelley was entitled to collect under the second 
policy to the extent of her actual damages. ___ S.W.3d at 
___. Progressive appeals to this Court, arguing that 
the trial court’s judgment should be reinstated.
            
“When both parties move for summary judgment and the trial court grants 
one motion and denies the other, the reviewing court should review the summary 
judgment evidence presented by both sides and determine all questions presented 
and render the judgment the trial court should have rendered.” Tex. Workers’ Comp. Comm’n v. Patient 
Advocates of Tex., 136 S.W.3d 643, 648 (Tex. 2004) (citations omitted). “When a 
trial court’s order granting summary judgment does not specify the grounds 
relied upon, the reviewing court must affirm summary judgment if any of the 
summary judgment grounds are meritorious.” FM Props. 
Operating Co. v. City of Austin, 22 S.W.3d 868, 872 (Tex. 2000) (citations 
omitted).
            
 Progressive argues it is entitled to judgment as a matter of law 
because it met its obligations under the single policy by paying its maximum 
limits, or alternatively, that the “Two or More Auto Policies” provision limits 
Kelley’s recovery to a single policy. It argues that the documents clearly and 
unambiguously demonstrate Progressive only issued one policy to the Kelleys with a maximum coverage of $500,025. In support, 
Progressive directs the Court’s attention to the multi-car discount reflected in 
the second document, and the affidavit of Debra Henry, Progressive’s Litigation 
Underwriting Specialist, who explained that Progressive has specific procedures 
for “5+ Car” policies. According to Henry, “5+ Car” policies are split into two 
pages because Progressive’s computer software only allows four vehicles per 
page, and that the two separate policy numbers generated are a product of 
Progressive’s computer program, not an indication of two separate policies. 
Henry stated that had there been two policies, Progressive could have charged 
Kelley two policy fees, rather than the one that it did charge. Also, Henry 
stated that the multi-car discount reflected on the second document was 
applicable only because the car listed was the fifth overall under the single 
policy, and that this discount would not have been available if the car was 
covered under its own distinct policy. Conversely, Kelley argues there is no 
fact question as to whether two policies were issued, and that refusing to stack 
the two policies in these circumstances is prohibited under Texas law. In support, 
Kelley points to the separate policy numbers and premiums on each document, as 
well as Progressive’s own “Product & Underwriting Guide.”
            
Although this question deals with the interaction of two documents, the 
rules of construction for insurance contracts apply.[2] The starting point of this analysis is 
the instrument itself. See Coker v. Coker, 650 S.W.2d 391, 393 (Tex. 
1983) (“If the written instrument is so worded that it can be given a certain or 
definite legal meaning or interpretation, then it is not ambiguous and the court 
will construe the contract as a matter of law.”). Here, the written instrument 
consists of two pages, and standing alone, contains the information necessary to 
be an insurance policy. It makes no reference to another related document or 
policy. In the top right corner, the document states “Page 1 of 2” and “Page 2 
of 2,” respectively, indicating that those are the only two pages related to 
that policy. These characteristics suggest the document is a single policy. 
However, Progressive urges the Court to consider its Product & Underwriting 
Guide and Henry’s affidavit to explain the two documents. Extrinsic evidence is 
not admissible for the purpose of creating an ambiguity. Nat’l Union Fire Ins. Co. of Pittsburgh, PA v. CBI Indus., 
Inc., 907 S.W.2d 517, 520 (Tex. 1995) (per curiam) (citations omitted). But here, the document 
does reflect some ambiguity. The reference to the “multi-car discount” on the 
second document, which covers only one car, creates some ambiguity. See Coker, 650 S.W.2d at 394 (“A contract . . . is ambiguous 
when its meaning is uncertain and doubtful or it is reasonably susceptible to 
more than one meaning.”). Also at issue here is latent ambiguity, which 
arises “when a contract which is unambiguous on its face is applied to the 
subject matter with which it deals and an ambiguity appears by reason of some 
collateral matter.” Nat’l Union Fire Ins., 907 S.W.2d 
at 520. Here, the surrounding circumstances—the existence of the two 
documents—creates a latent ambiguity as to the intent of the parties. Thus, we 
will consider extrinsic evidence, including the content of the first document. A 
review of the two documents together shows that each has a different policy 
number, policy period, premium, and listed drivers. Also, the first document 
reflects that it was modified more recently than the second. However, the 
coverage amounts and deductibles are the same in each document.
            
Henry addressed these discrepancies, explaining that Progressive’s 
computer program allows only four vehicles per page, so the fifth car must be 
listed on a separate page. While this explanation may indicate Progressive 
issued a single policy, the fact that a new policy number was generated for the 
second document does not. Also, Henry’s affidavit and Progressive’s own “Product 
& Underwriting Guide” conflict at times. Henry states that Kelley would have 
been required to pay an additional policy fee if there was a second policy, 
whereas the Guide states:
 
ProRater can only accept four vehicles per policy. 
You will therefore need to split policies for five or more vehicles. When 
you generate a quote, ProRater will prompt you to 
indicate whether it is for the second policy of a “5 + car” policy. 
Answering “Yes” to this question will generate a multi-car discount, and will 
prevent a policy fee and installment fee from being charged on the second 
policy. Only answer “Yes” when quoting the second policy. The primary policy 
should be answered “No.”
 
(emphasis added). As Progressive urges, this “second policy” 
could reasonably be read to refer to the second page or provision of the 
original policy, but it could also reasonably be read to refer to an additional 
independent policy. The Guide also refers repeatedly to a primary, secondary, 
and second policy, implying there is more than one policy involved here. Henry’s 
affidavit, taken together with the Guide, does little to resolve the ambiguity 
as to whether the second document is a separate policy. That a discount was 
given for a fifth car could also reasonably be construed either way—Progressive 
may want to reward a continuing customer by offering discounts on new, 
additional policies in the same way it would want to offer discounts on 
additional coverage under the same policy. Further, while it may seem reasonable 
for a computer program to carry over policy information onto an additional page, 
the fact that each document contains a separate policy number suggests they are 
separate, independent policies. This evidence is sufficient to raise a fact 
issue as to whether Progressive issued two policies, but it falls short of 
establishing as a matter of law only one policy was issued. For these reasons, 
we hold that the documents are ambiguous as to whether one or two policies were 
issued.
            
Kelley argues that neither party claimed the contract was ambiguous. But 
whether a contract is ambiguous is a question of law to be decided by the 
Court. J. M. Davidson, Inc. v. Webster, 128 S.W.3d 223, 229 (Tex. 2003); see also Sage St. Assocs. v. Northdale Constr. Co., 863 
S.W.2d 438, 445 (Tex. 1993) (holding that a court can decide a 
contract is ambiguous on its own motion). We have said that in an insurance 
contract, where a provision is subject to two reasonable interpretations, we 
will adopt the interpretation that favors the insured. Nat’l Union Fire Ins. Co. of Pittsburgh, Pa. v. Hudson Energy Co., 
Inc., 811 S.W.2d 552, 555 (Tex. 1991) (citations 
omitted). Here, we are not interpreting a particular exclusion 
or provision within an insurance policy, see, e.g., Fiess v. State Farm Lloyds, 202 S.W.3d 744, 746 (Tex. 
2006); rather, we are determining whether two documents amount to a single or 
separate policies. After reviewing the face of the documents and extrinsic 
evidence, we hold that the documents are ambiguous, and therefore, a fact finder 
should resolve the meaning. See J. M. Davidson, 128 
S.W.3d at 230–31; Coker, 650 S.W.2d at 394 (“When a contract contains an 
ambiguity, the granting of a motion for summary judgment is improper because the 
interpretation of the instrument becomes a fact issue.”).[3] Therefore, without hearing argument, we 
reverse the court of appeals judgment and remand to the trial court for further 
proceedings consistent with this opinion. Tex. R. App. P. 59.1.[4]
 
 
OPINION DELIVERED: March 27, 
2009
 






[1] 
This provision provides:
 
TWO OR MORE AUTO POLICIES
If this policy and any other auto insurance policy 
issued to you by us apply to the same accident, the maximum limit of our 
liability under all the policies shall not exceed the highest applicable limit 
of liability under one policy.

[2] 
The meaning of the first document/policy, which lists four cars, is not at issue 
because Progressive has already paid the limits on that policy. The question 
before the Court is whether the second document/policy is independent of the 
first.

[3] 
The record reflects that Progressive requested a jury trial and that Kelly 
argued, during summary judgment, that the issue of whether there is two policies may be a fact issue.

[4] 
Because the validity of the anti-stacking provision is contingent on a finding 
that Progressive issued two policies, we do not address it at this 
time.