OWEN, Circuit Judge,
concurring.
I respectfully concur in the judgment only. The panel majority’s decision is based on arguments that neither Admiral Insurance Company nor Cook advanced in the district court, nor were these arguments raised in this court until supplemental briefing was requested by our court. Respectfully, our jurisprudence does not allow us to affirm a summary judgment on any grounds, but rather only on the basis of any arguments advanced below. Admiral is entitled to summary judgment, however, since the events giving rise to the underlying suit against Cook fall outside the scope of Cook’s insurance policy. Admiral did advance this basis for summary judgment, both in the district court and in our court.
I
Cook acquired a general commercial liability insurance policy from Admiral. Cook contracted with M.J. Brogdin to deliver and oversee the running of casing for an oil well. In the course of that job, Cook made an error, and Brogdin sued. Brog *321 din’s two-page petition filed in state court alleged that Cook “removed more casing from the well site than [he] should, thereby resulting in a failure to complete the well to the desired depth.” Brogdin’s suit sought damages as a result. Cook filed the instant suit against Admiral, seeking a declaratory judgment that Admiral was required to defend and indemnify him from Brogdin’s claims.
The district court granted summary judgment in favor of Admiral. Among Admiral’s arguments for summary judgment, though not the basis of the district court’s decision, was the limited scope of the coverage set forth in the “classifications” section of the insurance policy. Admiral did not advance an argument on the basis of the “property damage” exclusions relied upon by the panel majority.[1]
II
The panel majority resolves this case on the basis of two “property damage” exclusions in the policy.[2] The panel majority concludes that the district court’s grant of summary judgment may be affirmed on the basis of these exclusions—which were not addressed by the parties until our request for supplemental briefing on appeal—because “we have recognized that we may affirm a district court’s judgment for reasons—supported by the record— other than those relied on by the district court.”[3]
Our court, however, has recognized limits on the reach of that general proposition. For instance, in Johnson v. Sawyer, we stated, “Although we can affirm a summary judgment on grounds not relied on by the district court, those grounds must at least have been proposed or asserted in that court by the movant.”[4] Yet here, the panel majority relies upon exclusions that were never asserted in the district court.
In LeMaire v. Louisiana Department of Transportation & Development, we recognized that the limits placed upon our summary judgment affirmance rule are intertwined with the general limits we place upon the scope of our consideration on appeal: “we may only affirm an order granting summary judgment on a basis that was presented to the district court. This is in keeping with our precedent that arguments not raised before the district court are waived and cannot be raised for the first time on appeal.”[5] Accordingly, the general proposition relied upon by the panel majority comes into tension with another of our court’s general propositions, stated—perhaps most succinctly—in another context by our en banc court: “It goes without saying that we are a court of review, not of original error. Restated, we review only those issues presented to us; we do not craft new issues or otherwise search for them in the record.”[6] We have recognized that “[i]t is for the parties, those who have a stake in the litigation, to decide which issues they want to pursue, *322 at trial and on appeal.”[7] As our en banc court recognized, “it is not for us to decide which issues should be presented, or to otherwise try the case for the parties.”[8] Here, because the parties chose—on the basis of their own assessments—to address other provisions contained in the policy, we should not relitigate the case for them.
Ill
There is, however, an alternative ground on which summary judgment may be affirmed that the parties did raise, both below and in their briefing to this court. Admiral contends that the claims asserted by Brogdin’s suit against Cook fall outside the scope of Cook’s policy. To determine the scope of Admiral’s duty to defend under Texas’s “eight corners” rule, we compare the facts alleged in Brogdin’s petition to the language of the policy.[9]
The underlying state-court petition states that Cook “removed more casing from the well site than [he] should, necessitating an expensive rework of the well.” On appeal, Cook explains that this was an “oversight” and cites to a description of this oversight as arising “when Cook’s employees miss counted [sic] casing joints.” However, the insurance policy contains an endorsement that “[t]his insurance applies to ... ‘property damage’ ... arising only out of those operations which are described by the classification shown on the Commercial General Liability Coverage Declarations, its endorsements!,] and supplements.” The “Commercial General Liability Coverage Part” includes the following “Classification[s]”:
OIL OR GAS LEASE WORK BY CONTRACTORS—OILFIELD LEASE ROAD AND DITCH MAINTENANCE, EXCAVATION AND BEAUTIFICATION OF OILFIELD LEASE SITE— NOT LEASE OPERATIONS—OILFIELD WATER STEAM CLEANING OF TANKS AND SMALL TANKS WITH PRESSURE WASHER WITH PSI OF 2500 OR LESS—NOT LEASE OPERATIONS OCCASIONAL SHOP WELDING—EXCLUDING ANY WORK ON EXISTING LINES[.]
OIL OR GAS CONTRACTOR’S EQUIPMENT RENTED TO OTHER^] (EXCLUDING ANY SELF-PROPELLED VEHICLES OR AUTOS) WITHOUT OPERATORS—NO IN-HOLE EQUIPMENT (PRODUCTS/COMPLETED OPERATIONS ARE INCLUDED IN THE GENERAL AGGREGATE LIMIT)[.]
SUB-CONTRACTED WORK ONLY TO OTHER INSURED INDEPENDENT CONTRACTORS, OIL OR GAS WORK IN THE FIELD[.][10]
The events for which Cook seeks coverage fall outside of the scope of the text. We must be mindful of the directive under Texas law that “courts must strive to give effect to the written expression of the parties’ intent” in interpreting an insurance policy.[11] Moreover, to determine the scope of coverage “the court must focus on the factual allegations that show the origin of the damages rather than on the legal *323 theories alleged.”[12] Reading the classifications as a whole, nothing listed in the policy’s coverage extends to the facts pled: the erroneous removal of casing from the site that hindered the completion of the well at the desired depth.
Nevertheless, Cook argues that the erroneous removal of the casing falls under the phrase “oil or gas lease work by contractors” in the classification. But that phrase is followed by a dash and references to lease road and ditch maintenance and the excavation and beautification of the oilfield lease site. Cook’s “removfal of] more casing from the well site than [he] should” bears no resemblance to the policy’s statements of coverage. Cook’s allegedly erroneous acts are wholly unconnected to maintaining lease roads or ditches. Similarly, one cannot say that Cook’s erroneous removal of the pipe was done to beautify or excavate the site: as Cook concedes, the casing was improperly removed owing to an “oversight,” a function of a counting error. Moreover, if “lease work by contractors” were to extend coverage to all activities undertaken by Cook in the course of his business—as Cook appears to contend—there would be no need for the examples following the dash. Indeed, the Supreme Court of Texas has held that “courts must be particularly wary of isolating from its surroundings or considering apart from other provisions a single phrase, sentence, or section” of an insurance policy.[13] Reading the classifications as a whole, the removal of the casing falls outside of the policy’s scope and, thus, coverage does not attach.[14]
Alternatively, Cook argues that this section of the insurance contract is unclear and should be construed against Admiral. He relies upon National Union Fire Insurance Co. of Pittsburgh, Pennsylvania v. Hudson Energy Co.[15] There, the Supreme Court of Texas held that “if a contract of insurance is susceptible of more than one reasonable interpretation, we must resolve the uncertainty by adopting the construction that most favors the insured.”[16] Cook’s reliance is misplaced, however, because that case made clear that “[i]f the written instrument is worded so that it can be given only one reasonable construction, it will be enforced as written.”[17] That is the situation in the instant case. The classifications list types of work that will be covered—for instance, the renting of Cook’s non-self-propelled equipment to others—and types of work that will explicitly not be covered— for instance, certain lease operations. As discussed above, the policy may only be reasonably interpreted by reading the examples following the dashes as cabining the preceding language. This explains the dual listings of non-coverage for “lease operations.” If the first listing of “lease operations” was not limited by reference to the cleaning of tanks, there would be no need to list it again with reference to shop welding.
Because the only reasonable interpretation of the classifications of Cook’s policy would not extend coverage to the events at *324 issue, “it will be enforced as written.”[18] For the same reasons Admiral has no duty to defend, it has no duty to indemnify.[19]
IY
Cook contends that Admiral waived its argument relying upon the classifications limiting the scope of the policy by waiting to raise this issue until Admiral’s motion for summary judgment below. Cook theorizes that this delay constitutes waiver, since he construes this language as constituting an affirmative defense. Even assuming this were an affirmative defense, there is no waiver. We have previously held that “a defendant does not waive an affirmative defense if it is raised at a pragmatically sufficient time, and the plaintiff was not prejudiced in its ability to respond.”[20] Cook does not argue to this court that he was prejudiced by the delay, nor is prejudice apparent. Moreover, we have previously held that a purely legal issue raised following relevant testimony at trial was asserted at a “pragmatically sufficient time.”[21] Under Texas law, the interpretation of an insurance contract is also a question of law.[22] On the facts presented here, there is similarly no waiver.
I respectfully concur in the judgment only.

. Ante, at 11.

. Id.

. Id. at 9-10 (citing Palmer ex rel. Palmer v. Waxahachie Indep. Sch. Dist., 579 F.3d 502, 506 (5th Cir.2009); LLEH, Inc. v. Wichita Cnty., Tex., 289 F.3d 358, 364 (5th Cir.2002)).

. 120 F.3d 1307, 1316 (5th Cir.1997) (citing Mo. Pac. R.R. v. Harbison-Fischer Mfg. Co., 26 F.3d 531, 538 (5th Cir.1994), F.D.I.C. v. Laguarta, 939 F.2d 1231, 1240 (5th Cir.1991), and Frank C. Bailey Enter., Inc. v. Cargill, Inc., 582 F.2d 333, 334 (5th Cir.1978)).

. 480 F.3d 383, 387 (5th Cir.2007) (internal citation omitted).

. United States v. Brace, 145 F.3d 247, 255 (5th Cir.1998) (en banc).

. Id. at 256.

. Id.

. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Merchs. Fast Motor Lines, Inc., 939 S.W.2d 139, 141 (Tex.1997) (per curiam).

. The original appears to use en-dashes instead of em-dashes or hyphens. This has been corrected without brackets for clarity.

. State Farm Life Ins. Co. v. Beaston, 907 S.W.2d 430, 433 (Tex.1995) (citation omitted).

. Merchs. Fast Motor Lines, Inc., 939 S.W.2d at 141 (internal quotation marks and citation omitted).

. State Farm Life Ins. Co., 907 S.W.2d at 433 (citation omitted).

. E.g., Merchs. Fast Motor Lines, Inc., 939 S.W.2d at 141 (holding that the negligent discharge of a firearm while in a truck did not fall within the scope of an insurance policy covering injury " 'resulting from the ownership ... of a covered auto' ").

. 811 S.W.2d 552 (Tex.1991).

. Id. at 555 (citations omitted).

. Id. (citation omitted).

. Id. (citation omitted).

. Farmers Tex. Cnty. Mut. Ins. Co. v. Griffin, 955 S.W.2d 81, 84 (Tex.1997) (per curiam).

. Rogers v. McDorman, 521 F.3d 381, 386 (5th Cir.2008) (internal quotation marks, brackets, and citation omitted).

. Lucas v. United States, 807 F.2d 414, 418 (5th Cir.1986).

. Am. Int’l Specialty Lines Ins. Co. v. Rentech Steel LLC, 620 F.3d 558, 562 (5th Cir.2010).